## MONTGOMERY v. ALLIS–CHALMERS MFG. CO. et al.

No. 13209.

Court of Civil Appeals of Texas. Dallas.

May 22, 1942.

Rehearing Denied Sept. 18, 1942.

Lucian Touchstone and John A. Pace, both of Dallas, and W. R. & W. P. Abernathy, of McKinney, for appellant.

Lawther & Cramer, of Dallas, for appellees.

LOONEY, Justice.

The parties will be referred to as in the court below. Sam Montgomery, the plaintiff, sued Allis-Chalmers Mfg. Company, a corporation, and the manager of its Dallas branch office, A. J. Simpson, to recover damages for personal injuries sustained by plaintiff's wife while on the premises of the corporation. The defendants filed separate answers, and, the general demurrer to plaintiff's petition, urged by each, being sustained, the suit was dismissed; hence this appeal.

It appears from plaintiff's allegation that the corporation was engaged in the business of selling, servicing and repairing

farm implements and machinery; that plaintiff, accompanied by his wife, entered the business house of the corporation, with the view of inspecting and purchasing a mower, kept on display. It seems that in its building, the corporation maintained an office, a department for servicing, assembling and repairing farm merchandise and machinery; a department where parts used on machinery and equipment were kept; restrooms for both men and women; offices for its various salesmen, and a large room where goods were displayed and prospective purchasers and customers visited to inspect machinery, implements, etc., kept for sale. The building fronted north on the south side of the street, was entered by a short flight of stairs that led to the large display room; immediately to the left after entering was an office, partitioned off and entered through a door; a few feet south of the office door was another door, unlocked, nothing on it to indicate where it led, that opened upon an unlighted landing, from which a steep stairway, 12 to 14 steps, led to the basement of the building; that about three feet south of the door last mentioned, the east wall of the display room runs east about three feet and then turns south, and at this point, a door opens through the east wall of the display room, into the gentlemen's restroom, and is so designated; and several feet further south, a double door opens into a large room used for servicing and assembling merchandise and machinery; no other door. is located on the east side of the display room; but there is a double door opening through its south wall into a room where parts and accessories used on implements and machinery are kept; and on the west side, a glass partitioned office, used by salesmen, is located. These are the only doors opening from the display room, and while the record discloses that a ladies' restroom was maintained, its location was not disclosed; obviously, however, it did not open from the display room. The door leading to the basement was conspicuously located near the center of the east wall of the display room, being the only door leading from the room that, before opening, one could not have ascertained, by designation or otherwise, where it led, or what lay within. Before consummating their business mission, plaintiff's wife, desirous of using the ladies' restroom, and no one being present in the display room from whom she could have ascertained its location, mistakenly entered the unlocked, unmarked door leading to the basement, believing same to be the entrance to the room she was seeking; and, on entering, the landing being unlighted, fell down the steps, some 12 or 14 in number, to the basement, and was injured as alleged. Negligence was specified as follows: (1) In maintaining the door through which Mrs. Montgomery entered, without having upon it any warning or sign, indicating what it opened into; (2) in allowing the door to remain unlocked; (3) in failing to provide a guard or rail directly in front of the door, and (4) in failing to have the opening where she entered sufficiently lighted.

Plaintiff challenged the correctness of the action of the court in sustaining the demurrers and dismissing the suit. That plaintiff's wife occupied the status of an invitee, we do not think can be successfully questioned; however, we cannot agree that, the court erred in sustaining the demurrer as to the defendant Simpson. He was simply the corporation's agent, in charge of its Dallas branch, and was not charged with active negligence. In the early case of Labadie v. Hawley, 61 Tex. 177, 179, 48 Am.Rep. 278, Judge Stayton quoted with approval language pertinent to the question under consideration, as follows: "The principal is always liable to third persons for the misfeasances, negligences and omissions of duty of his agent, in all cases within the scope of his agency. The agent is also personally liable to third persons for his own misfeasances and positive wrongs. But he is not, in general, liable to third persons for his own nonfeasances or omissions of duty in the course of his employment. His liability in these latter cases is solely to his principal, there being no privity between them and such third persons; the privity exists only between him and his principal. And hence the general maxim as to all such negligences and omissions of duty is, in cases of private agency, respondeat superior." Also see Galveston Wharf Co. v. American Grocery Co., Tex.Civ.App., 13 S.W.2d 983, 989, 990; 2 Tex.Jur. (Agency) p. 591, Sec. 179.

However, under the liberal indulgence of inferences, implications and intendments in such cases, we are of opinion that, whether or not, in the exercise of reasonable care, the defendant corporation should have anticipated that a person situated as was plaintiff's wife, minus the

named precautionary measures, would likely mistake and enter the unlocked and unnamed door under the belief that it opened into the ladies' restroom, was a question of fact and not one of law; nor do we think it can correctly be said, as a matter of law, that she was guilty of contributory negligence.

The doctrine we think applicable to the situation presented, is announced in 38 Amer.Jur. (subject Negligence), p. 796, § 135, as follows: "It is well settled that where a store, office building, or similar business establishment to which the public is impliedly invited has a door leading to a cellar, elevator shaft, or other dangerous place, which is left unfastened, and which, from its location and appearance, may be mistaken for a door which a member of the public on the premises is entitled to use, the proprietor is liable to a person who by mistake passes through that door and is injured."; supported by authorities, among others, 20 A.L.R. 1147, 27 A.L.R. 585, and 42 A.L.R. 1098. We are of opinion, therefore, that the court erred in sustaining the corporation's general demurrer to plaintiff's petition, and dismissing the suit.

The judgment below as to the defendant Simpson is affirmed; but as to Allis-Chalmers Mfg. Company, is reversed and the cause remanded for further proceedings.

Affirmed in part; reversed and remanded in part.

BOND, C. J., dissents.

BOND, Chief Justice (dissenting).

I am not in accord with the majority opinion. The action of the trial court in sustaining demurrer to plaintiff's petition is warranted on two grounds; first, the petition is insufficient to charge the defendants with actionable negligence, and, second, that it conclusively shows that the injured party was guilty of contributory negligence as a matter of law. Manifestly, if plaintiff's petition is not sufficient to sustain liability, certainly the facts on trial would not support a judgment; the trial on the merits can be no stronger in law than the allegations of the petition. Therefore, we must assume, as against general demurrer, that plaintiff has alleged all the facts upon which he expects to recover, and that the trial judge, in the exercise of her judicial function, determined the weight of the alleged facts in the most favorable light to plaintiff's cause of action. The trial judge in this case has promptly performed her duty. It is true that great and inexcusable delay in the courts is one of the grave evils of our time which have come in many cases to be a distinct reproach to the administration of justice. The prompt disposition is to be commended and encouraged. To do that is to proceed promptly in the calm spirit of regulated justice. If the petition here alleges no cause of action, then the case should not take up the time of the courts only to be determined at the end of the trial, or on appeal, that no just liability exists.

Continuing the quotation, 38 Am.Jur., p. 796, § 135, employed by the majority to sustain the proposition that the proprietor of a store is liable to a person who, by mistake, passes through an unfastened door leading to a cellar, etc., and is injured, the author says: "However, a recovery is denied the injured person if the situation was such as to afford no reasonable ground for such a mistake. Moreover, a person who has received an injury in consequence of passing through a wrong doorway in a part of the building not designed for the use of unattended customers cannot recover unless he was induced to enter therein by the invitation or allurement of the keeper of the premises." This doctrine is supported by the same authorities cited by the majority: 20 A.L.R. 1147; 27 A.L.R. 585; 42 A.L.R. 1098, which collate the cases holding to the effect that a person who has received an injury in consequence of going through a wrong door when not induced to enter by acts of the keeper of the premises, cannot recover. In 27 A.L.R. 579, the author cites with approval the case of Keeran v. Spurgeon Mercantile Co., 194 Iowa 1240, 191 N. W. 99, in which is held that "A merchant is not liable for injury to one who goes to the store to secure an article which he left there for safekeeping and opens the door behind the counter not intended for the use of customers, by falling down an unlighted stair concealed by the door."

It is a universal rule of law, supported by all authorities, that the duty which a merchant owes his customers with respect to safety of the premises applies only to that part of them which is appointed for the transaction of the business and necessary and proper exits and entrances. In 20 R.C. L. 67, § 59, the author says: "The owner or occupant of premises is liable for injuries

sustained by persons who have entered lawfully thereon only when the injury results from the use and occupation of that part of the premises which has been designed, adapted, and prepared for the accommodation of such persons. If a person, although on the premises by invitation, deviates from the accustomed way or goes to a place other than such as are covered by the invitation, the owner's duty of care ceases forthwith."

We need not go beyond the opinions of our own courts:

In Galveston Oil Co. v. Morton, 70 Tex. 400, 7 S.W. 756, 757, 8 Am.St.Rep. 611, plaintiff entered the building on the premises, and was there directed to another part of the building—to an oil room. On arriving at the oil room he proceeded to another room without requesting a guide, and sustained an injury. He had the owner's license to go upon the premises, but he sought no advice or invitation to enter the room where the injury occurred. Our Supreme Court held that the owner was not liable for the injuries occasioned by its unsafe condition. The Court said: "The owner of real property is entitled to the exclusive use and enjoyment of the same, and is not liable to others for injuries occasioned by its unsafe condition when the person receiving the injury was not at or near the place of danger by lawful right, and when the owner has neither expressly nor impliedly invited him there, or allures him by attractions or inducements exhibited or held out in some way calculated to lead him into danger without giving notice of the peril to be avoided. [Citing authorities] The doctrine is established by the above and many other cases that a trespasser or mere licensee who is injured by any dangerous machine or contrivance on the land or premises of another cannot recover damages unless the contrivance is such that the owner may not lawfully erect or use, or when the injury is inflicted willfully, wantonly, or through the gross negligence of the owner or occupier of the premises."

In the case of Swift & Co. v. McElroy, Tex.Civ.App., 126 S.W.2d 1040, 1041, the plaintiff took a load of hogs to the defendant's stockyard for the purpose of selling them to the defendant. After unloading the hogs, he was directed by defendant's employe to "follow his hogs through" to the scale pen. No invitation or request on the part of the defendant's employe caused the plaintiff to enter the pen, and while in the pen, he was injured. The Fort Worth Court of Civil Appeals said:

"We think the trial court should have granted the defendant's request for a peremptory instruction, for two reasons: First, regardless of appellee's pleadings, the undisputed testimony shows that appellant's employee neither invited nor requested appellee to come into the pen where the accident occurred, and never requested appellee to assist in herding the hogs that were in the weighing pen; and appellee did not testify that he was assisting in the herding.

"We have concluded that, under the facts testified to by appellee, he was a mere bystander at the time he was injured. He was bordering upon the realm of a trespasser, at the time. As such, the defendant's employee could not owe appellee a greater duty than to refrain from doing some wanton or willful act, or to not be guilty of some omission to perform some duty where such omission amounts to gross and inexcusable negligence. Stallcup v. United Gas Public Service Co., Tex.Civ. App., 119 S.W.2d 574, writ dismissed, opinion by Mr. Justice Speer.

"Second, even if it could be said that appellant could be held liable to appellee, because of the failure of its employee to use ordinary care, on the occasion in question, nevertheless, the element of foreseeableness is indispensable to a recovery, and we hold that appellant's employee could not reasonably foresee that appellee would put his foot on the hog's head, or kick at the hog in such a manner that his foot would be on the hog's head, when the employee struck at the hog's head, in an attempt to herd it. Texas & P. Ry. Co. v. Bigham, 90 Tex. 223, 38 S.W. 162; Diefenbach v. Great Atlantic & Pacific Tea Co. et al., 280 Mich. 507, 273 N.W. 783; City of Dallas v. Maxwell, Tex.Com.App., 248 S.W. 667, 27 A.L. R. 927; Union Stock Yards v. Peeler, Tex. Com.App., 37 S.W.2d 126; Missouri-Kansas-Texas R. Co. of Texas v. McLain, Tex. Com.App., 105 S.W.2d 206; Waggoner v. Simmons, Tex.Civ.App., 117 S.W.2d 553."

In St. Louis Southwestern Ry. Co. of Texas v. Rea, Tex.Civ.App., 202 S.W. 812, 813, the Texarkana Court of Appeals, by Judge Levy, announced the same rule in these words: "An obligation rests upon the owner of premises devoted to business purposes to take reasonable care to keep them safe for the protection of persons coming upon them. But this duty does

not extend so far as to make the company responsible for the unsafe condition of those parts of the premises not intended for use by the public, and where they are not expected or invited to go."

To the same effect, see Fort Worth & D. C. Ry. Co. v. Armitage, Tex.Civ.App., 39 S.W.2d 108, 112, error refused; 30 Tex.Jur. 863, § 180; Kruse v. Houston & T. C. R. Co., Tex.Civ.App, 253 S.W. 623.

So, in the case at bar, the defendant Company owed its customers no duty in respect to safety in its building except in the place appointed for the transaction of the business. It might well be said that the injured party, in company with her husband, was an impliedly invited guest in the Company's showroom, hence it devolved upon the keeper of the store to maintain that room in a reasonably safe condition, else the Company would be responsible for his acts or omissions resulting in injury to its customers.

In plaintiff's petition there is alleged no act, omission or commission, on the part of the Company or any of its employes, inducing by invitation, allurement or otherwise, the injured party to open the door leading to the basement. She had no business with the Company that called for her entrance into the doorway. The basement was not an appointed place for the Company's business with its customers. The doorway had no inviting sign above it for one to enter, or indicia of any kind that it was for the use of the public, and particularly for women, or to allure one to enter there. The doorway and the basement were for the exclusively private use of the Company and its employes. Then can it be said with any degree of reason or foresight that every time an employe of the Company should go through the doorway to the basement for, perhaps, a bolt, screw, or some part of equipment, he must lock and unlock the door, and the Company to keep the stairway lighted and a handrail down the side, when such precautionary measure would not be suited for the Company's business, to avoid liability for injury there? Must a company dealing in farm implements make safe from injury every place, entrance and exit of its building, even where the public and its customers are not invited and not expected to be, particularly women? Can it be said that the law of negligence impels the keeper of such building to reasonably anticipate that a customer, and particularly a woman, would enter the storage room basement under such circumstances as here alleged, and then be liable for injury because forsooth the door was unfastened and the stairway landing unlighted? Can it be said that the keeper must, at his peril, anticipate that an uninvited person, and particularly a woman, would open an unlocked door and enter a dark, unlighted room or landing in the belief that it was a ladies' restroom? Due regard must be had to the use and purpose of the basement, the stairway, and the door to the accommodation of the Company's business. Negligence rests primarily upon two elements; first, reason to anticipate injury and, second, failure to perform the duty arising on account of that anticipation. If no injury may be anticipated, certainly no duty is breached. The unlabeled doorway, as in this case, the dark landing and the stairway, suitable to the Company's business, the "men's restroom" labeled as it was above the door and located on the east side of the showroom, far away from the door in question, undoubtedly could have had no alluring, inviting effect on the injured lady to mistake the unlabeled door, located in the middle of the south wall of the showroom (an inappropriate place) as the "ladies' restroom." The injured lady opened the door and entered the unlighted stairway landing without invitation and for her own convenience, and without disclosing her wish or intention to anyone. She was, so far as this record discloses, a trespasser, or, at least, a mere licensee, hence no injury could have been anticipated and no negligence of duty is shown.

In 30 Tex.Jur., p. 864, § 180, the rule is announced: "A recovery is not sustainable where the evidence leads to the conclusion that 'it could not have been reasonably anticipated' that he would attempt to go to the place in which the injury occurred." This rule is forcibly brought out by our Supreme Court in Galveston Oil Co. v. Morton, supra.

Furthermore, it may well be said that the injured lady was guilty of contributory negligence as a matter of law. This record shows that she and her husband entered the defendant's building with the intention of her husband purchasing a mower, thus the inference is that their visit there was during work hours. In going to the showroom, they passed the managerial offices of

the Company, located on the east side of the building, and on the west side of the showroom, they observed a "glass partitioned office used by the salesmen"; they also observed that the doors to the accessory and storerooms, the showroom, the offices and men's toilet were appropriately marked, signalizing the business apportionment and invitation to enter. They observed that there was no door marked "ladies' restroom," and in consequence, the lady opened the stairway door without seeking direction or invitation from anyone. She entered the dark apartment, staircase in it, which had no semblance to a ladies' restroom. With these disclosures within the clear view and actual knowledge of the injured party, and without asking any of the Company's employes the location of the place she wanted, she opened the door and entered without taking the necessary precautions for her own safety.

The doctrine of contributory negligence applicable here is announced in 38 Am.Jur., p. 880, § 199, as follows: "A person who walks boldly through a doorway into a portion of the premises with which he is not familiar without exercising any care to ascertain the existence of defects in the premises or other dangerous conditions which he may encounter beyond the door is guilty of contributory negligence as a matter of law. One who enters uninvited into the private apartments of another who owes him no duty to keep such part of the premises in a safe condition, the way being plain to be seen, and who, in coming back, mistakes the door through which he falls and is injured, for the one through which he passed in, is guilty of contributory negligence which will bar a recovery against the owner."

In support of the above announcement is cited, among other authorities, Du Rocher v. Teutonia Motor Car Co., 188 Wis. 208, 205 N.W. 921, 42 A.L.R. 1094. The syllabus in 205 N.W. 921 of this authority reflects the holding of the Court: "Where plaintiff, a total stranger to entrance to a garage, which entrance was unlighted and night was dark, crossed threshold while in great haste to obtain parts necessary to repair his broken down automobile before garage closed, and fell down stairs and was injured, held, that he was guilty of contributory negligence as a matter of law."

As unfortunate as the incident of this injury may be, it must be held that the keeper of the building was not an insurer of its customers' safety and that it owed no duty to plaintiff and his good wife to keep the door in question locked or the stairway lighted; and if such duty rested upon the keeper, which clearly it did not, the injured party contributed to her own injury in failing to take the necessary precautions for her own safety. In all fairness to this record, the trial court's judgment should be affirmed.

YOUNG, Justice.

Plaintiff's status (of invitee) continued even to mistakenly opening the basement door, through which she stepped and fell. This is so, first, because of her fact allegations, taken as true upon demurrer, viz: " * * *, and that upon entering the premises of the defendants, said customers, both men and women, are expected and invited by the defendants to go into said display room, or through the same to its various other departments, as hereinabove mentioned, or to use either gentlemen's or ladies' rest rooms, both of which are provided by defendant on its premises, and that no restrictions are placed by the defendants upon the movements of the patrons and customers in said display room, *or into the other rooms opening out of said display room.*" (Italics supplied.)

For purpose of this record, therefore, defendant's duty of keeping its premises in reasonably safe condition for plaintiff, as an invitee thereon, extended, on the admitted facts, to the very compartment where her injuries were sustained; it being another room "opening out of said display room."

Additional to this, plaintiff did not know that defendant had excepted the space beyond this unlabeled door from an implied invitation extending to its office and service department, all on the east side of the building. Said basement door was adjacent to and only a few feet to the left of the gentlemen's restroom on the same east side. There was a ladies' restroom, according to defense pleading, somewhere on the particular floor, as to which plaintiff was, undoubtedly, an invitee. Viewing the situation as it first appeared to plaintiff, and not as same was by her later discovered to exist, it would seem that, whether Mrs. Montgomery's mistake was justifiable or whether defendant was negligent in not exercising some of the alleged precaution-

562

ary measures, are all matters upon which reasonable minds might differ; thus, questions for the jury's determination.

Appellees' motion for rehearing will be overruled.

BOND, C. J., dissents.