**PENN v. GARABED GULBENKIAN et al.**

No. 14390.

Court of Civil Appeals of Texas. Dallas.

Oct. 5, 1951.

Rehearing Denied Nov. 2, 1951.

Roy C. Coffee, R. D. Hardy and L. E. Elliott, Dallas, for appellant.

Palmer & Rochelle and Goldberg, Fonville, Gump & Straus, all of Dallas, for appellees.

YOUNG, Justice.

Appellees' recovery in amount of $18,250 followed a hearing on their motion for summary judgment. Rule 166–A, Texas Rules of Civil Procedure.

Plaintiffs below were the surviving heirs of Kerope Gulbenkian, a citizen of New York State, who died in 1940; their cause of action being in substance that Gulbenkian, owner of a certain patented formula, had, in December 1939, entered into an agreement with defendant Penn whereby exclusive right to manufacture, sell and use said invention was granted to the latter; that under terms of the license, said Penn became bound and obligated to pay a royalty of "fifteen cents (15¢) a pound for each and every pound of bleaching product manufactured and sold by the defendant or his

sub-licensees under the said patent No. 1836134, * * *"; that defendant had alternatively agreed to pay a minimum royalty of $250 per month, the license agreement extending to August 4, 1953, making regular payments thereon until July 1947, since which time defendant has failed and refused to pay the stated installments, though often requested to do so. The judgment rendered in favor of plaintiffs was in full of these $250 payments matured and to mature during the term of said license agreement.

Accompanying the motion for summary judgment was the affidavit of Hrepsime Gulbenkian, widow, to which was attached as Exhibit "B" the license agreement between Kerope Gulbenkian and one Schotz of date August 1, 1933, through which deceased had acquired his rights in and to U. S. Patent No. 1836134; also Exhibit "C", the license agreement between Gulbenkian and defendant Penn already mentioned.

Defendant's second amended original answer and cross action, sworn to in essential part, asserted an entire failure of consideration with respect to the obligation entered into by him under aforesaid license agreement, in that he was induced to enter into the same by false and fraudulent representations made by the said Kerope Gulbenkian both orally and in writing. It was defensively pled in part "That Kerope Gulbenkian represented that the invention embodied in United States Patent No. 1836134 was a new and useful improvement and invention for the commercial manufacture of bleaching agents for wheat flour, and in particular for the manufacture of 'Maturo'. That the representations so made were false and known to be false when made by the said Kerope Gulbenkian. That this defendant relied upon the representations so made and believed them and was thereby induced to effect and enter into said license agreement. That as a matter of fact the invention embodied in United States Patent No. 1836134 is wholly inoperative and it is not and cannot be used commercially in the manufacture of bleaching agents for wheat flour and is not and cannot be used in the manufacture of 'Maturo', nor does it have any use of any value

whatsoever. That by reason thereof it is of no value and useless, and therefore there is and was a lack of consideration for the execution of the license agreement by the defendant. That any and all right, title and interest in said license agreement now owned by the plaintiffs is derived from the said Kerope Gulbenkian, and they are his sole and surviving heirs. This defendant hereby and herewith tenders the license agreement to plaintiffs and hereby and herewith offers to rescind such agreement."

Further defenses set forth that the described patent had expired in December 1948 and that any obligation of the license agreement requiring defendant to pay royalties under an expired patent was without consideration, against public policy, and in violation of both Sherman Anti-Trust Act 15 U.S.C.A. §§ 1–7, 15 note, and cited provisions of Texas Anti-Trust Laws; and by way of cross action, alleged that said patented formula was worthless and that, perforce of the specified fraudulent representations on part of Kerope Gulbenkian, defendant should recover back all cash payments made from inception of the license agreement to June 1, 1947,—a sum total of $19,250. To these defenses plaintiffs interposed exceptions, the two and four-year statutes of limitation, a plea of laches, and estoppel on part of defendant to deny the validity of the basic patent or to assert that the formula covered thereby was inoperative and useless; pleading additionally the binding effect on respondent of said license agreement.

The affidavit of Penn, in opposition to motion for summary judgment, reiterated the charges contained in his sworn answer relative to fraud, misrepresentations and failure of consideration; alleging, among other things, a lack of knowledge until June 1947 that said invention was inoperative and commercially useless in the manufacture of bleaching agents for wheat flour; and that affiant "has a personal knowledge of the facts set out above, and, if sworn as a witness, could competently testify to the facts alleged." His answers to plaintiffs' request for admissions of fact denied that Exhibit "A" was a true copy of the original Schotz patent; refusing to admit the same to be competent evidence on a trial, with similar statement concerning Exhibit "B" (original patent); answering that he did not have sufficient information with respect to whether said patent had been assigned by Schotz to Gulbenkian so as to truthfully answer such numbered request; admitting that the copy marked Exhibit "C" was a true copy of the license agreement between affiant and Gulbenkian of date December 19, 1939, subject to all proper objections that might otherwise be made thereto on a trial. Said agreement included the following recital. "It is mutually covenanted and agreed between the parties hereto that, in the event the aforesaid letters patent or any of the claims thereof, which are essential to the commercial operation under this agreement, be adjudged by a court of competent jurisdiction to be invalid or of a scope so limited as not to cover the processes, products, improvements or inventions thereunder, and said adjudication shall not have been reversed or disturbed on appeal to a court of higher appellate jurisdiction, and the time to so appeal shall have expired, then the obligation of the licensee to pay royalties hereunder shall cease * * *."

In numerous points, appellant argues that material issues of fact are presented in the foregoing record, thereby precluding a rendition of summary judgment for the amount of royalties claimed, or any similar ruling adverse to his cross action.

On the other hand, appellees, under various counterpoints, assert the absence of genuine issues of fact in the pleading of defendant; in particular (1) that the affidavit filed by appellant opposing appellees' motion for summary judgment merely recited the general allegations of his pleading, all of which were only conclusions without factual basis and contained no sufficient statement of admissible facts to establish a defense; (2) that "since the license agreement contemplates the payment of royalties until a final adjudication of patent invalidity, and appellant admits in his pleading that he made no effort to use the licensed process for seven and one-half years, appellant is estopped to set up invalidity or inoperativeness of the patent and

the consequent failure of consideration * * *"; and (3) that his cross action, based on similar defensive allegations, was of no avail, since appellees pled laches to the cross action, which plea was substantiated by facts before the court.

■ The question before us narrows to a consideration of appellant's defenses as hereinabove outlined; i. e., whether they involve triable issues of fact. It is our conclusion that, explicit in said defensive pleading and cross action, are genuine fact issues rendering premature any final disposition thereof in this summary proceeding. In the law of patents, an agreement to pay royalties may be enforced by action like any other contract, subject however to the usual defenses. 40 Am.Jur., p. 638, sec. 149. Thus failure of consideration or plea of fraud inducing the license may constitute a good defense to an action for royalties arising under the patent. 69 C.J.S., Patents, § 264 pages 806–7–8; Rusking v. Spreen, Tex.Civ.App., 142 S.W. 49. While a licensee is precluded from setting up invalidity of the patent under which he operates, a charge asserting worthlessness of the device or formula may be made without assailing its validity. Rowe v. Blanchard, 18 Wis. 441; Page v. Dickerson, 28 Wis. 694; Meissner v. Standard Ry. Equipment Co., 211 Mo. 112, 109 S.W. 730. And concerning defendant's charge of fraudulent representations, the disqualifying effect of art. 3716, R.S., (transactions with deceased) can with more propriety be urged upon his tender of such proof on final trial. Discussing Federal Rule 56, 28 U.S.C.A., (source of Texas Rule 166–A) in Stevens v. Howard D. Johnson Co., 4 Cir., 181 F.2d 390, 394, Judge Parker, for the Court, had occasion to say: "It must not be forgotten that, in actions at law, trial by jury of disputed questions of fact is guaranteed by the Constitution, and that even *questions of law arising in a case involving questions of fact can be more satisfactorily decided when the facts are fully before the court than is possible upon pleadings and affidavits.*" (Emphasis ours.)

■ It is hardly necessary to state that the summary judgment practice is to be exercised with great caution, litigants having a right to final trial "where there is the slightest doubt as to the facts * * *. Such a judgment, wisely used, is a praiseworthy time saving device. But, although prompt despatch of judicial business is a virtue, it is neither the sole nor the primary purpose for which courts have been established." Dochler Metal Furniture Co. v. United States, 2 Cir., 149 F.2d 130, 135. And similarly with respect to the proper function of the Rule in question, it is stated in Zig Zag Spring Co. v. Comfort Spring Corp., D.C., 89 F.Supp. 410, 414, that: "Rule 56 should be invoked only when the complete absence of a genuine issue of fact is apparent upon the face of the record. Resort to the remedy *where there is any doubt is futile* because it is now well settled that all doubts on this preliminary issue must be resolved against the moving party. The rule can be made to fulfill its purpose if it is invoked only in appropriate cases, and these are not too numerous." (Emphasis ours.)

Appellant's further points appear at present reading to comprehend questions of law, a discussion thereof being unnecessary to this appeal. On grounds above stated, however, the judgment below is reversed and set aside, with instructions that the case proceed to trial on the merits.