**JACKSON v. MARSHALL.**

No. 14397.

Court of Civil Appeals of Texas. Dallas.

Oct. 12, 1951.

Al Templeton and F. T. Gauen, Jr., Dallas, for appellant.

Leake, Henry, Golden & Burrow and Geo. Garrison Potts, Dallas, for appellee.

CRAMER, Justice.

This is an appeal from a judgment based upon an instructed verdict for appellee. Appellant Andrew Jackson, 56 years of age, as plaintiff, sued appellee R. W. Marshall, as defendant, for damages for personal injuries received by him in course of his employment in appellee's business, conducted by Marshall under the trade name of "Hampton Cleaners." The parties will be referred to as in the trial court.

Defendant, although eligible, did not carry workman's compensation insurance; therefore was barred from his usual common law defenses of contributory negligence, assumed risk, and negligence of a fellow servant.

Plaintiff was the only witness to testify and when he rested, a motion for an instructed verdict was presented and sustained by the trial court. The only question before us is whether plaintiff made a jury question of fact as to actionable negligence on his cause of action against defendant. In order to determine that question it is necessary that we fully review plaintiff's testimony on such issue. Plaintiff testified that on the Sunday morning in question, he, his employer and another employee were present in defendant's place of business; that his employer was working in another room adjoining the one he worked in,—the two rooms being separated by a fire wall with a single door between them, and the other employee was sweeping the floor somewhere in one of the three rooms used in the business. He described the rooms in the building as follows: "Just like two buildings fronting the street, and a wall cut—a hole cut in the wall between them that puts the two buildings together, and on the back of the twenty-nine build-

ing, 2329, they have got a fire-proof room built across the back of that, which makes a three-room apartment out of the plant."

The plaintiff had been employed by defendant about four years before the accident; however he had worked for defendant before that time for an additional period of about three years. At the time of the accident sued on, he was carrying from the plant a tub (No. 1 size) which contained muck and dirty cleaning powder used in the process of cleaning the naphtha for reuse in the cleaning of clothes. Clothes were cleaned in a large container which had at the bottom a place where sediment composed of used cleaning powder, dirt from the clothes, and other sediment accumulated. About once a week the accumulation had to be removed, at which time the plaintiff would remove a plate from the bottom of the container and remove such accumulated waste matter. This was usuallly done on Sundays when the plant was shut down. Plaintiff usually filled the tub up to the ring, the tub at that point weighing about 75 to 100 pounds. He would then carry it out through the back door and outside the building and dump it. He testified that about six months prior to the accident sued on here, he strained his back while lifting the tub, doing the same kind of work, and was off for a week before going back to his usual work. At that time he went to a doctor and his employer said he would have help available in the future in carryng out the tub. His employer and the other employee in the plant had helped him when he called on them at times. Plaintiff stated, however, that he hardly ever asked anybody to help him, that he felt it was his job and he was going to do it. He also testified: "Q. Did he tell you he was going to have somebody help you in the future with that tub? A. He might have said 'I will have somebody to help you,' but he never said, 'Don't do it' or anything like that. He said, 'We will have to have somebody to help you.'

"Q. Did you tell him the tub was too heavy for you to lift? A. No. I never told him that."

As to how the accident happened, he testified:

"Q. Mr. Jackson, I want you to tell the jury just exactly how you got hurt on January 23rd with that tub? A. Well, it is a tub about that big, and it was full of this muck or mud, or whatever you want to call it, this filter powder and dirt that comes out of clothes. I stooped down to pick it up, and I come up with it with a catch in my back, and I went ahead and carried that tub out, but that's all, I couldn't carry no more out that day, and I haven't carried one out since.

"Q. Mr. Jackson, did you have to go home early that day because of these injuries? A. Well, I didn't do all I should have done, no. I didn't grease up the machinery like I usually do on Sunday. As soon as I got this thing cleaned out like I should, I left and went home.

"Q. Was it necessary for you to go to bed? A. Yes, sir, I went to bed when I got home." He also stated that on his way out with the tub he stepped over a board some 16 inches in height, maintained there to keep water from coming into the building from the outside. The record further shows he had known his employer since 1910; that on the present occasion, before he lifted the tub in question, he looked out and saw his employer Marshall sitting at his desk in the adjoining room, but did not call him or ask him to help; he knew his co-employee was on the property but did not know where and did not seek his help. He stated that he hurt his back when he picked up the tub; that although he usually filled the tub up to the ring, he was not required to fill it to any particular depth; that he filled it to what he thought he could carry, and that is what he did on the occasion in question. He answered the question, "Didn't the injury on the previous July suggest that perhaps a tub filled was more than you could carry without injury to yourself?" To which he answered, "No. I thought I could carry it."

He further testified that his employer did not tell him to fill the tub up to the ring, or to carry the tub out by himself;

however his employer did give him the job of cleaning the tub out and to clean the filter out; that it was the job of the man cleaning the filter to carry it out. He also testified that on the morning of the accident no machinery was running and it was quiet in the plant. Also, as follows:

"Q. Now, you testified yesterday, I believe, that when you got the tub full you stepped to the fire door and you saw Mr. Marshall at his desk? A. Yes.

"Q. You saw him sitting there. What was he doing? Did he have his back to you? A. Oh, he had his back to me. He was working on his books, or something.

"Q. Yes. And you also testified, I believe, that you made no effort to call him at that time? A. I wouldn't call the boss and ask him to come help me do something that is my job.

"Q. Did you make any effort to call him? A. No.

"Q. Did you make any effort to call him or J. T. Croley? A. No, I just looked to see if I could see any of them, and I didn't see them, and I went on and done the job.

"Q. Had you ever on previous occasions called anybody? A. No, I never asked anyone to help me.

"Q. Your testimony is, then, that you never asked anyone for help in lifting that tub, is that correct? A. I don't remember of ever asking anybody to help me.

"Q. Now, after you lifted the tub and when you had it about halfway up and you injured yourself, as you said, did you go ahead and carry that tub out? A. Yes.

"Q. Yesterday you testified that was the last tub you ever carried out? A. That's right." He testified that his employer knew he always came to the plant on Sunday to do this job, as well as to grease the machinery.

He further testified to injuries to his back sufficient to support a verdict for money damages if liability existed.

Appellant, on the above record, asserts that a jury question was raised by such evidence under the holdings of our Supreme Court in Western Union Telegraph Co.

v. Coker, 146 Tex. 190, 204 S.W.2d 977, 979. To this we cannot agree. Under the evidence here it is undisputed that help was available to appellant; but he did not call for assistance for the reasons above stated.

 The rule applicable here is correctly stated in Western Union Telegraph Co. v. Coker, supra, as follows: "The employer is not liable when he has provided help and injury results from the act of the employee in voluntarily proceeding to do the work without assistance. The same is true when sufficient help is nearby and available and the employee does the work alone without seeking or asking for assistance."

The plaintiff's case was fully developed and therefore the instructed verdict and judgment thereon for appellee was proper.

Finding no error in the record, the judgment of the trial court is affirmed.