**WHELAN et al. v. STATE et al.**

No. 6665.

Court of Civil Appeals of Texas. Texarkana.
Oct. 9, 1952.

Rehearing Denied Oct. 30, 1952.

John E. Taylor, Marshall, Morton Taylor, Sinton, for appellants.

C. M. Turlington, Marshall, Shirley W. Peters, Dallas, for appellees.

WILLIAMS, Justice.

A joint motion for summary judgment was granted and decree entered which awarded plaintiffs, the County of Harrison, Harleton Common School District and the State of Texas, judgment for the full amount of alleged delinquent taxes due for the year 1950, together with foreclosure of the tax liens on mineral and leasehold interests owned by appellants, D. E. and R. J. Whelan, defendants below, situated within said taxing units.

Section (c) of Rule 166–A, Texas Rules of Civil Procedure, pertinent to above ac-

tion of the trial court reads: "Motion and Proceedings Thereon. The motion shall be served at least ten days before the time specified for the hearing. The adverse party prior to the day of hearing may serve opposing affidavits. The judgment sought shall be rendered forthwith if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that, except as to the amount of damages, there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Appellants assert that "a genuine issue as to a material fact" was raised and that plaintiffs were not as a matter of law entitled to such summary judgment. In testing this question we are not only directed but confined to the pleadings and affidavits so filed.

In 1950, defendants rendered their properties for taxes with the tax assessor and collector of Harrison County. The rendition so made listed their acreage in the respective surveys itemizing such as were in producing gas leasehold units; acreage in other surveys classified as non-producing oil and gas leases; and certain machinery, moneys, and other personal properties. Each parcel in this rendition carried the valuation as placed thereon by defendants. The tax assessor-collector took no action on this rendition other than to receive same. This rendition together with that of others who had rendered mineral interests for taxes were later referred to a firm of petroleum engineers whom we assume were then employed by the county. Defendants in person and by their attorney appeared before the Board of Equalization after the Board had given notice of the proposed increase in valuation. After a hearing which lasted approximately three days in which litigants introduced evidence in support of and against the formula so advocated by the petroleum engineer the Board approved and adopted such formula. This resulted in the increase in valuation here under attack. After this hearing, the Equalization Board delivered the rendition sheets to the office of the tax assessor and collector. In preparing his tax rolls for the year 1950, he carried forward the new values which the petroleum engineer had penciled to the right of each valuation that had theretofore been made by the respective owners.

A. C. Stultz, the petroleum engineer, proposed the formula which the Board of Equalization adopted. The use of this formula by the Board resulted in a violent increase in the valuation of the producing leasehold interests of defendants. Extracts from the testimony of Mr. Stultz given on the hearing before the Equalization Board were incorporated in an affidavit filed by defendants. The petroleum engineer used the same formula on the Whelan field that he used on the Waskom field. In this formula he fixed a value on the Rodessa sand for the entire Whelan field or area at a total assessed value of $1,231,500. "In determining the reserves in this field, in checking the wells there I determined that the average producing section in the field was 22 feet. Now then, from the basis of the production and from my experience in other gas fields producing from the Rodessa sand, I assigned to that 9,566 M.C.F. per acre, as the remaining reserves; * * * there are a lot of methods to determine reserves." It is undisputed that he used as his yardstick the average for the whole field, namely, 22 feet, in calculating the reserve under defendants' producing leaseholds. Under their profert of the evidence adduced in the hearing before the Board of Equalization and in their contesting affidavit, defendants urged that not only the factor of actual sand thickness under their producing units were ignored but that the Board had assigned a different sand thickness than that which actually existed.

If this be so, and this is what we construe the defendants were seeking an opportunity to establish, then the Equalization Board adopted and used a discriminatory and fundamentally wrong formula to ascertain the valuation of the reserves under defendants' acreage. The formula adopted would run afoul of Art. 8, Sec. 1 of the Constitution of Texas, Vernon's Ann.St., which prescribes that "Taxation shall be equal and uniform. * * * shall be taxed in proportion to its value * * *." In our opinion the formula adopted is subject

to the same vice condemned in Rowland **v.** City of Tyler, Tex.Com.App., 5 S.W.2d 756, consistently cited and approved by our courts to this date. See also Ogburn v. Ward Co. Irrigation Dist., Tex.Com.App., 280 S.W. 169; Randals v. State, Tex.Civ. App., 15 S.W.2d 715. The size of a container, earthen or metal, is an important if not the major factor in calculating its contents. If plaintiffs' sands were materially below this average thickness of 22 feet, then they would be penalized under the formula adopted while others with a deeper reserve sand would be rewarded. "If the board arbitrarily adopted Erainborg's report and adhered thereto without regard to [its] true value of the property, then it employed a wrong principle in fixing the value of the property and the assessment must be set aside." Simkins v. City of Corsicana, Tex. Civ.App., 86 S.W.2d 792, 794. And this may be so, "without showing a dishonest intent on the part of the Board." 40 T.J., p. 161; see also 40 T.J., Taxation, Sec. 115.

 In ascertaining from the record if a genuine issue of a material fact is presented the provisions of Rule 166–A "should be temperately and cautiously applied". Kaufman v. Blackman, Tex.Civ.App., 239 S.W.2d 422, 428. And as stated in 22 Texas Law Review, p. 438, "It is historical that in administering summary judgment practice, the courts have been inclined to be critical of the showing made by the moving party. Customarily he is held strictly to a conclusive showing that no fact issue exists and that he is entitled to judgment without further delay. Conversely, the courts accord the resisting party considerably more indulgence; the motion will be denied if it appears that a substantial fact issue may exist, regardless of informalities or defects in the resisting party's papers." See also King v. Rubinsky, Tex.Civ.App., 241 S.W. 2d 220, and decisions there discussed. The application of this rule to the record here leads to the conclusion that defendants were entitled to a hearing on the merits of their claim asserted.

 As above observed, the tax assessor-collector received the rendition sheet with the valuation by defendants placed thereon. Under the provisions of Art. 7211, R.C.S. of Texas, it is to be presumed that this officer was satisfied that the property was "correctly and properly valued according to the reasonable cash market value of such property on the market at the time". This action of the assessor-collector legally constituted an acceptance of the rendition as made, for as provided in Art. 7211, supra, "if the assessor is satisfied that the value is below the reasonable cash market value of such property, he shall at once place on said rendition opposite each piece of property so rendered an amount (which the assessor did not do) equal to the reasonable cash market value of such property at the time of its rendition". "If the assessor agrees to the rendered valuations, he, the assessor, makes the rendered valuation the assessed valuation, or, if he does not agree, he is required to note the assessed value on the same list, subject in either case, to final action of the board of equalization as to raising or lowering it." Crocker v. Santo Consolidated Ind. S.D., Tex.Civ.App., 116 S.W.2d 750, 756.

In the affidavit of the assessor-collector, he states that later this rendition and inventory that had been filed with him "was referred by me in my official capacity to the Board of Equalization of Harrison County, Texas, for inspection, correction and equalization." The tax assessor was required to make such referral of the rendition sheets to the Board of Equalization by virtue of Arts. 7206 and 7218, R.C.S. of Texas. The provisions of both articles were complied with and appellants' attack upon alleged non-compliance with any procedural question is overruled.

We pretermit a discussion or a disposition of the matters urged in support of defendants' plea in abatement. For the reasons hereinabove given, the judgment is reversed and the cause remanded.