## LOUD

v.

## SEARS, ROEBUCK & CO. et al.

No. 14674.

Court of Civil Appeals of Texas. Dallas.

July 24, 1953.

On Rehearing Oct. 16, 1953.

Further Rehearing Denied Nov. 13, 1953.

Chaney & Davenport and Henry Smith, Dallas, for appellant.

Thompson, Knight, Wright & Simmons, Pinkney Grissom and Timothy E. Kelley, Dallas, for appellees.

DIXON, Chief Justice.

This is a suit for damages for personal injuries. Appellant Loud as plaintiff instituted the suit against two defendants, Sears, Roebuck & Company, hereinafter called the Company, and the Company's building superintendent Ray C. Arthur, Jr., hereinafter called Arthur. The trial court sustained a motion for summary judgment in favor of the defendants. Plaintiff appealed.

It is undisputed that the Company had more than three employees, but was not a subscriber under the Workmen's Compensation Act. So the defenses of contributory negligence, assumed risk, and fellow servant negligence are not available as defenses to the Company. To render appellees liable it is of course necessary for appellant to show that appellees were guilty of negligence which proximately caused injury to appellant.

In their motion for summary judgment and in their brief on appeal the appellees contend that appellant failed as a matter of law to make out even a prima facie case of negligence. In support of their contention appellees say (1) that admissions made by appellant in a deposition show that appellant *voluntarily* and without acting under the instruction of any agent of appellees proceeded to do the work which caused his injuries; and (2) that the facts as outlined by appellant in his deposition established as a matter of law that *appellees could not reasonably foresee* that appellant would be injured in the manner claimed. Since appellees' motion for summary judgment was sustained, it is obvious that the trial court's conclusions agree with appellees' contentions as to the effect of appellant's testimony. Appellant's one point on appeal of course sets up a contrary contention.

The only question before us on this appeal is this: Does the record raise genuine fact questions as to negligence on the part of appellees?

██ It is a well-established principle of law that an employer has a nondelegable and continuous duty to exercise reasonable care in providing for an employee adequate help in the performance of required work. Western Union Tel. Co. v. Coker, 146 Tex. 190, 204 S.W.2d 977. It is equally well established that a motion for summary judgment should be refused if the record, viewed in a light most favorable to the resisting party, discloses a material issue of fact. Simmons v. Wilson, Tex. Civ.App., 250 S.W.2d 638; King v. Rubinsky, Tex.Civ.App., 241 S.W.2d 220.

In order to apply the above principles correctly it is necessary for us to make a careful examination of the record in this case. Here in broad outline is appellant's version of the facts: Appellant was employed as a porter in one of the Company's retail stores. One day while Arthur, the Company's building superintendent, and appellant were standing on the Company's dock, Arthur told appellant to be back on the dock at 4:00 o'clock that same afternoon to help move a motor that was lying nearby on the dock. At the appointed hour that afternoon appellant was on hand as instructed. Another man was present. The

record does not disclose whether this other man was also an employee of the Company. A conversation then ensued between appellant and the other man. Appellees insist that this conversation is material in support of the summary judgment, so we shall set it out in detail later in this opinion. The two men proceeded to lift the motor in an attempt to place it on a hand push truck which was to be used in moving the motor inside the building. It was while trying to help lift the motor onto the truck that appellant sustained an injury to his back.

Though it makes tedious reading, we quote excerpts from appellant's testimony in order to show the basis for our conclusions in this case:

"Q. Was there anybody else around there that ever told you to do anything or not to do anything besides Ralph Sherwood? A. Sometimes the building superintendent, Mr. Arthur; * * *

"Q. And Mr. Arthur never did tell you what he wanted done? A. Oh, lots of times he'd come in and tell us boys, if he wanted us to do anything. He was over Mr. Sherwood, and we had to listen to him more than we had to listen to Mr. Sherwood. * * *

"Q. You say Mr. Ross got after you for something? A. He got after me about carrying two sacks of cement.

"Q. Well, as a matter of fact, they all got after you for doing too much? A. Yes, sir.

"Q. Well, you were trying to do too much to impress them, weren't you? A. No, sir. I wanted to be as handy as I could be.

"Q. Well, I know, but they kept fussing at you for trying to do too much, too, didn't they? A. Well, Mr. Ross did one time.

"Q. He told you not to strain yourself, didn't he? A. No, sir. He just told me not to overdo, not to carry too much stuff. * * *

"Q. Not to carry too much? A. No, sir. Mr. Ross is the only one I ever remember getting after me about that. * *

"A. Mr. Arthur told me to come—I was standing there by Mr. Arthur * * * and Mr. Arthur said, 'Be back down at four o'clock; I want to carry this motor into the retail store,' and I says, 'Yes, sir,' and I came back at four o'clock.

"Q. Was Mr. Arthur there then? A. No, sir.

"Q. He wasn't there? A. He said for us to come back and bring it in. * * *

"Q. He wasn't there when you came back? A. No, sir. When I came back, he wasn't there. * * *

"Q. Did you look at the motor? A. No, sir; I didn't pay no attention to it.

"Q. Did you see it when Mr. Arthur was there? A. Well, there was merchandise and stuff down there, and I didn't pay no attention to it.

"Q. You didn't look at it? A. I didn't pay no attention.

"Q. Well, you didn't see what he had in mind? A. No, sir. I was just listening to what he said.

"Q. Did you look at what he was talking about? A. I may have glanced at it, but I didn't pay no attention. He just told me to come on back down there. * * *

"Q. And you got back at four o'clock? A. Yes, sir.

"Q. And when you got back down there, who was there? A. Well, there was a white man there.

"Q. What was his name? A. I don't know what his name was; but they know, I guess.

"Q. But do you know? A. No, sir; I don't know what his name was. * * * No, sir: I didn't think about trying to find out his name. * * *

"Q. Do you know it now? A. No, sir; I don't know it now.

"Q. All right. Did you ask him? A. No, sir; I didn't ask him. * * *

"Q. Anybody else there? A. No, sir. * * *

"Q. Well, was anything said between the two of you? A. Well I walked down there, and he said, 'Come on; let's carry this motor in,' and I says, 'It's too heavy for us two.' He says, 'No,' and he caught hold of the front end of it; but when he lifted it up he kind of unbalanced it. It looked like it had a kind of a light side to it, and he got that side, and I got hold of the motor side, the heavy side, and when I got it up I couldn't put it down, and I said, 'It's too heavy.' He says, 'Put it on the Truck,' and I says, 'I can't put it down,' and I just had it there and I couldn't let it down; I was scared it would cut my foot off. *I never had lifted anything that heavy.* The truck wasn't very high.

"Q. What? About ten or twelve inches high? A. The truck wasn't so high. When I put it on the truck to relieve myself, my back popped and spit come up in my mouth, and I got sick, and I told him, 'I hurt my back then mighty bad.' *I didn't know the motor was so heavy, or I wouldn't have picked it up.* * * *

"Q. * * * I mean Mr. Arthur wasn't there? A. No, sir.

"Q. And Mr. Sherwood wasn't there? A. No, sir. * * *

"A. No, sir. *There wasn't nobody but us two,* * * *.

"Q. Well, you went on and helped him with it? A. No. I couldn't do no more. * * *

"A. Yes, sir. It's a cream motor, that they cut cream with.

"Q. *Do you know how heavy it was? A. No, sir.*

"Q. Do you know the make? A. *No, sir. I never had lifted one like it in my life.*

"Q. *You never had seen one like it before? A. No, sir.* * * *

"Q. *Well, when you walked up on the dock, did you ask him what you were supposed to do? A. No, sir. I was standing there to meet Mr. Arthur, to see if Mr. Arthur would come; but he had told us what he wanted done.* * * * *he'd told me he'd be back there.* * * *

"Q. He just told you to be down there? A. Just told me to be down there at four o'clock, and at four o'clock I was there to work.

"Q. Did he tell you what the work was to be done? A. He said he wanted that motor carried into the retail store.

"Q. He didn't say anything about who would be there to help you? A. No, sir. * * *

"Q. *Now, when you got down there and you were standing there waiting for Mr. Arthur, did you see anybody else there? Well, you saw this man that helped you? A. I didn't notice nobody but the man that helped me.*

"Q. *What? A. I didn't notice nobody but the man that helped me.*

"Q. *Well, you said there was somebody working on the dock. A. Generally the man that manages the dock would be standing in his little office.*

"Q. *Did you see him? A. No, sir; I didn't see him. I just saw the man that I worked with.* * * *" (Emphasis supplied.)

From the above quotations it will be observed that appellant testified that Arthur gave him specific instructions to be present at a definite time to do a specific thing: help move the motor. Appellant did not know how heavy the motor was, he had never before lifted or even seen one like it; there was no one else near except the other man whose status as a fellow employee, or a stranger, is not determined; Arthur, the building superintendent, did not show up at the appointed time, nor did he send anybody to help appellant, unless possibly it was the other man in the picture.

■ We think the failure of Arthur to be present at the appointed place and hour, or at least his failure to send some one or more persons to assist appellant, raises a fact question as to negligence. It may be that at a trial on the merits such failure can satisfactorily be explained. But we believe the record in its present state would support a finding in behalf of appellant at a trial on the merits of negligence on the part of appellees which proximately caused whatever injuries appellant may have sustained on the occasion in question.

■ Appellees cite us the case of Western Union Telegraph Co. v. Coker, 1947, 146 Tex. 190, 204 S.W.2d 977, in which it is held that an employer is not liable if the employee is injured in performing work which he undertook voluntarily without any instructions from his superiors; or if the employee does the work alone without seeking assistance; and further, that an employee cannot recover for a temporary inadequacy of help unless such inadequacy was known at least constructively to the employer. We do not believe the holdings in the cited case are applicable to the facts as shown in this record. In the cited case the facts were that Coker ordinarily had an assistant, but his assistant was not present at the moment, and Coker did not try to summon him. Moreover in Coker's case, his foreman and other employees were in the next room and easily available. No such fact situation is disclosed in the record we are now considering. Here appellant did not volunteer to move the motor; he was acting under the specific instructions of Arthur, one of his superiors; so far as this record shows, no one else known to be the Company's employee was present to whom appellant could have appealed for assistance; and the Company must be charged with constructive notice at least of the inadequacy, for the building superintendent after indicating that he would be present, or would have help present, failed either to show up himself or to send anyone, if we accept appellees' view that the other man who figured in the episode had not been sent to help. It seems to us that

Western Union v. Coker, supra, and other cases in which it has been held that an employee voluntarily did work resulting in injury, have no application in this case.

Appellees also cite us the case of Jackson v. Marshall, 243 S.W.2d 205, by this Court. We do not think it is in point either. Marshall injured his back while lifting a tub of refuse. The facts showed that about six months before, Marshall had injured his back in the same way—by lifting just such a tub of refuse. Certainly in the light of his previous experience, before lifting the second tub of refuse he should have called for assistance. And assistance was easily available to him, for Marshall was working in sight of his employer and in the same building with another employee. No such situation is before us in the instant case.

Appellees point out that the other man who was present on the dock at 4:00 and who took a part in the attempt to move the motor was not shown to have been an agent or employee of the Company. Appellees then take the position that appellant must be considered a volunteer because he took instructions to do the work from a man not an agent of the Company, and proceeded to do the work without making inquiry as to the man's authority to supervise him. We think appellees' position is untenable. It is true that appellant talked to the other man about the weight of the motor. But his testimony shows that in proceeding to try to lift the motor he was following the instructions of Arthur, his superior, not any instructions that the other man may have given him. At least a fact issue is raised on the question. We again quote from appellant's testimony: "Q. Well, when you walked up on the dock, did you ask him what you were supposed to do? A. No, sir. I was just standing there to meet Mr. Arthur, to see if Mr. Arthur would come, *but he had told us what he wanted done.*" (Emphasis supplied.)

■ Appellees further state that appellant had been warned not to lift loads too heavy, and was actually violating these

orders when he was trying to lift the motor; so must be considered a volunteer, so far as the Company's liability is concerned, when he strained himself lifting the motor. It is true that Mr. Ross had once admonished appellant against carrying too heavy a load. But this admonition took place prior to the motor-lifting episode, and was a general instruction which was later superseded by Arthur's specific and special instructions to appellant to help move the motor. Arthur's instructions were the last authoritative uncanceled orders received by appellant. Under these circumstances we do not consider that Mr. Ross' earlier admonition constitutes a defense to appellant's effort to obey Arthur's later instructions about lifting the motor.

To support their contention that appellees could not reasonably have foreseen that appellant would be injured, appellees cite us, among others, the case of Great A. & P. Tea Co. v. Evans, 1943, 142 Tex. 1, 175 S.W.2d 249. In the cited case Evans was injured while lifting a sack of potatoes weighing about 100 pounds. The evidence showed that Evans was a strong young man, who had lifted such sacks of potatoes many times before. The evidence even showed that it was the usual and customary thing for grocery store clerks and employees to do this character of work. Under these circumstances we certainly agree that the employer could not foresee that Evans would be injured. But the facts now before us are quite different. Appellant was a man 54 years old and weighed about 147 pounds. He testified that he had never before been called upon to lift such a motor. The weight of the motor is not given in the record, but the circumstances imply that it was quite heavy. Arthur, the superintendent, was present on the dock to see about the motor when he gave his instructions to appellant. He must have known of the general physical characteristics of the motor; otherwise, why would he have indicated by his instructions that he would have assistance available for appellant? That he did so indicate is as good as conceded by appellees, for in their brief, in their statement to their first counter point, they say: "Mr. Arthur instructed James Loud to return to the loading dock at 4:00 o'clock *to assist* in carrying a motor into the retail store." (Emphasis supplied.) Appellees plainly realized that appellant would need assistance, hence they should reasonably have anticipated that he would be hurt if he was not furnished assistance. So far as the record shows, appellees furnished no assistance whatever to appellant.

We believe the record shows that appellant has raised fact issues which he is entitled to submit to a fact trier, jury or judge, in a trial on the merits. That being true, the judgment of the trial court should be reversed and the cause remanded for trial on its merits.

We think there is another reason why this cause should be remanded for a trial on the merits. The record before us falls far short of a full development of the facts. In Western Union v. Coker, supra, a case relied upon by appellees, and which was a case tried on the merits, our Supreme Court held that the record failed to disclose any negligence on the part of the employer. Yet the judgment was reversed and remanded under Rule 505, T.C.P., for a fuller development of the facts. We realize that Rule 505 applies only to the Supreme Court and not to Courts of Civil Appeals. But we believe that the same principle is even more appropriate in the case of a summary judgment,—especially a summary judgment involving the question of negligence, which is ordinarily a fact issue that requires a full development of all the facts as a basis for a proper finding.

The judgment of the trial court is reversed and the cause remanded for a trial on the merits.

YOUNG, J., dissents.

## On Rehearing.

**DIXON, Chief Justice.**

The exact words addressed to appellant by Arthur, appellee's building superintendent, were these: "Be back down at four o'clock; I want to carry this motor into the retail store."

In our original opinion we interpreted these words as an instruction from the building superintendent to appellant to be present at the dock at four o'clock in order to assist in moving the motor into the retail store. Appellee now contends that such an interpretation was an erroneous assumption on our part for which there is no ground whatsoever.

The reason we so interpreted the building superintendent's words was that both appellant and appellee so interpreted them. Appellant in his deposition testified without objection that the superintendent had instructed him to be present at four o'clock to assist in moving the motor. As to appellee's interpretation, we quote from appellee's brief, page 7:

> "The events leading up to the lifting of the motor are set out in the deposition of James Loud as follows: At approximately 12:00 o'clock noon on July 9th, James Loud went to the loading dock of Sears, Roebuck & Co.'s Lamar Street Store in order to deliver a package. At that time he saw Mr. Arthur, the building superintendent, at the dock, and *Mr. Arthur instructed James Loud to return to the loading dock at 4:00 o'clock in order to assist in carrying a motor into the retail store* (Deposition of James Loud, page 32)." (Emphasis supplied.)

And again in appellees' brief, page 18:

> "Mr. Arthur gave the instructions to appellant at the dock at noon, four hours or more prior to the accident. The instructions were, not to move the motor, but simply to help get it into the store."

However, if there is doubt as to what the superintendent intended by the words he used, we think their proper interpretation becomes a fact question under the circumstances here present. Castle v. Lloyds Cas. Insurer, Tex.Civ.App., 244 S.W.2d 359 (writ ref. n. r. e.); Avrick v. Rockmont Envelope Co., 10 Cir., 155 F.2d 568 (Syllabus 17). And of course being a fact question, it may not be determined on motion for summary judgment.

Appellees also take issue with our statement that the failure of Arthur to be present at the appointed place and hour, or at least his failure to send some one or more persons to assist appellant, raises a fact question as to negligence. Appellees say that there is no pleading to support any such fact issue. Appellant's original petition, in specifying the alleged acts of negligence in paragraph IV–1, contains this allegation: "* * * defendants, * * * were guilty of the following acts of negligence: (1) In directing the plaintiff to lift the heavy motor without sufficient assistance." We think the above allegation is sufficient to admit the testimony in appellant's deposition, especially in the absence of objection and in view of Rules 67 and 90, T.C.P.; Strong v. Garrett, 148 Tex. 265, 224 S.W.2d 471, syl. 16; Murchison v. Post Independent School Dist., Tex.Civ. App., 258 S.W.2d 229 (ref. n. r. e.).

There are certain well-established principles which must guide us in passing upon the propriety of this or any other summary judgment. The burden is upon the movant to prove that there is no genuine issue of any material fact. All doubts as to the existence of a genuine issue as to a material fact must be resolved against the party moving for a summary judgment. The court accepts as true all evidence of the party opposing the motion which tends to support such party's contention, and gives him the benefit of every reasonable inference which properly can be drawn in favor of his position. On the other hand, a motion will not be granted if sustaining it involves the credibility of

affiants, or deponents, or the weight of the showings, or a mere ground of inference. Gulbenkian v. Penn, Tex.Sup., 252 S.W.2d 929.

In the above cited case the Supreme Court affirmed a judgment of this Court. In the Court of Civil Appeals opinion Justice Young, speaking for this Court, said:

"It is hardly necessary to state that the summary judgment practice is to be exercised with great caution, litigants having a right to final trial *'where there is the slightest doubt as to the facts * * *.'* Doehler Metal Furniture Co. v. United States, 2 Cir., 149 F.2d 130, 135. And similarly with respect to the proper function of the Rule in question it is stated in Zig Zag Spring Co. v. Comfort Spring Corp., D.C., 89 F. Supp. 410, 414, that: '* * * Resort to the remedy *where there is any doubt is futile* because it is now well settled that all doubts on this preliminary issue must be resolved against the moving party. * * * (Emphasis ours.)" Penn v. Gulbenkian, Tex.Civ.App., 243 S.W.2d 220, 223. (First emphasis supplied.)

Other cases bearing on this subject are Neigut v. McFadden, Tex.Civ.App., 257 S.W.2d 864 (circumstantial evidence); Havens v. Dallas Power & Light Co., Tex. Civ.App., 256 S.W.2d 689; Whelan v. State, Tex.Civ.App., 252 S.W.2d 271 (resisting party accorded more indulgence, motion denied if it appears substantial fact issue may exist regardless of informalities or defects in resisting party's papers).

It is in the light of the foregoing principles that we have weighed the record before us. In his deposition appellant testified that at the time he was injured he did not know the motor was so heavy, or he would not have picked it up; that he had never lifted one like it in his life. Also he testified that when he walked up on the dock, he did not ask the man there what he was supposed to do,—that he was there to meet Mr. Arthur, who had already told what he wanted done. The appellant further testified that later that day at 4:00 o'clock when he showed up at the dock there was nobody there except a man who appellees insist is not shown to have been an employee of appellee Company. If appellant's testimony is true, there was no other employee present to whom he could have appealed for assistance. Since we are required, on motion for summary judgment, to accept appellant's testimony as true and give him the benefit of every reasonable inference, we think that the above testimony is sufficient to raise a fact question as to whether appellant was a volunteer, and whether he reasonably could have, or should have asked for assistance.

Further applying the principles before stated, we think the record raises doubts as to several material fact issues. If Arthur, the building superintendent, did not mean by his words to instruct appellant to help move the motor, as appellant thought he did, then what did he mean? How heavy was the motor—did it weigh one pound or one ton? There is testimony that it was heavy, but that is an indefinite comparative statement. What did it look like? Was it a huge giant motor, which obviously could not reasonably be lifted by one man, or two men, or even four or six men? Such evidentiary facts might assist the court in determining whether appellant is legally to be considered a volunteer under the circumstances, or whether appellee Company ought to have foreseen the consequences of its failure to furnish assistance, or additional assistance. Appellant testified that only he and the mysterious stranger were on the dock at the time he was hurt. How far away then was his nearest fellow employee—close enough that appellant could and should have asked him for help? Should appellant have waited for Arthur to appear? Who was the mysterious stranger who was present on the dock at 4:00 o'clock and who undertook with appellant to move the motor? Was he an employee of appellee Company? Why was he on the Company's dock and why was he helping to move the motor? If he was not an employee, should the Com-

pany have had some one present to assist appellant? These and other doubts raised by the record cause us to conclude that appellees have not discharged their burden to show that there was no genuine issue of material fact in this case.

Such doubts disclosed by the record also moved us to state that we thought the judgment of the trial court should be reversed because the record falls far short of a full development of the facts. Similar conclusions have been reached by other courts in summary judgment cases. King v. Rubinsky, Tex.Civ.App., 241 S.W.2d 220; Bridgeport Brass Co. v. Bostwick Laboratories, 2 Cir., 181 F.2d 315; Stevens v. Howard D. Johnson Co., 4 Cir., 181 F.2d 390. We are of course aware that under some circumstances summary judgment is proper in negligence cases, and that the record need not be as complete as one might expect in a trial on the merits. Nevertheless the record should be sufficient to meet the legal tests which have been established as necessary in summary judgment proceedings to protect a litigant's right to his day in court, and should show conclusively that no genuine issues of material fact are before the court.

Appellees contend that the judgment should be affirmed as to the appellee Arthur, because he, as an agent of appellee Company, would be liable to third parties only for his own misfeasance and positive wrongs—not for nonfeasance or omission of duty in the course of his employment. Labadie v. Hawley, 61 Tex. 177; Montgomery v. Allis-Chalmers Mfg. Co., Tex. Civ.App., 164 S.W.2d 556 (ref. w. o. m.). We sustain appellees on this point.

The motion for rehearing will be sustained as to appellee Arthur, and as to said appellee the judgment of the trial court will be affirmed. As to appellee Sears, Roebuck & Company, the motion for rehearing is overruled.

YOUNG, J., withdraws his dissent in this case.