Etta Belle FIELDS et vir, Appellants,

v.

BURLISON PACKING COMPANY,
Appellee.

No. 16730.

Court of Civil Appeals of Texas.

Fort Worth.

June 17, 1966.

Rehearing Denied July 15, 1966.

Mock, Banner, McIntosh & Wells, and Jack Banner, Wichita Falls, for appellants.

Jones, Fillmore, Robinson & Lambert, and Clyde Fillmore, Wichita Falls, for appellee.

## OPINION

LANGDON, Justice.

This is an appeal from a judgment non obstante veredicto for appellee. Appellant Etta Belle Fields, as plaintiff, sued the Burlison Packing Company, as defendant, for damages for personal injuries received by her in the course of employment. The parties will be referred to as in the trial court.

The defendant, although eligible, did not carry Workmen's Compensation Insurance and therefore, was barred from common law defenses of contributory negligence, assumed risk and negligence of a fellow servant, Art. 8306, § 1 (4), Vernon's Ann. Tex.Civ.St.

It is necessary, however, to a recovery by the plaintiff that she prove negligence on the part of the defendant or his agent or servant acting in the general scope of employment and that such negligence was a proximate cause of her injury. Art. 8306, § 1 (4), supra.

The jury in answer to special issues found (1) that an employee of the defendant placed the "lifter tub" of hamburger meat on the floor of the shipping room and in doing so failed to exercise due care which was a proximate cause of plaintiff's injuries; (2) that defendant failed to furnish sufficient help for the handling of the container of hamburger meat at the time and on the occasion in question and such failure was a proximate cause, and that defendant did not fail to exercise due care in failing to provide mechanical lifting devices, in placing thirty pounds of hamburger meat in a single container or in its use of the "lifter tub" container. The total damages fixed by the jury was $16,000.00.

By three points of error the plaintiff contends the court erred in disregarding the jury verdict and in failing to enter judgment for the plaintiff on the jury findings.

We affirm.

Our discussion may be confined to a single question, i. e., was the evidence adduced by the plaintiff legally sufficient to prove negligence on the part of the defendant or his agent or servant which was a proximate cause of her injuries?

■ Under the rule providing that the court may render judgment non obstante veredicto if a directed verdict would have been proper, "the term 'no evidence' does not mean literally no evidence at all. 'No evidence' comprehends those situations wherein by the application of established principles of law the evidence is deemed legally insufficient to establish an asserted proposition of fact." Kirkpatrick v. Raggio, 319 S.W.2d 362 (Fort Worth Civ.App., 1958, ref., n. r. e.); Joske v. Irvine, 91 Tex. 574, 44 S.W. 1059, p. 1063 (Sup.Ct., 1928).

■ Based upon our review of the record we have determined that the evidence is legally insufficient to sustain findings of negligence and proximate cause. A summary of the evidence follows:

Defendant is in the general meat packing business and employs 30 to 40 persons, an average of more than 30 persons regularly, including Saturday, the day here involved. The plaintiff, age 41, was a strong, healthy female employee. She had been continuously employed for 4 years and 9 months on May 9, 1964, date of her alleged injury. According to her testimony she had, during the period of her employment, "worked all over the plant," did most all of the custom wrapping of meat. She "even filed in the office a little," and "made filets on the boning table." She worked "wherever I was needed." She had picked sides of bacon from an overhead hook, head high weighing between 20 to 30 pounds each,

and had sacked hams weighing 25 to 30 pounds each. On May 9, 1964, her employer came to the weiner room where she was making weiners with two female employees whose work she supervised and told her "the meat was ready to be wrapped and they were in a hurry because the man was coming after it and wanted me to go on up there." She knew he meant the shipping room as this is where meat was weighed and wrapped. The boning room is adjacent to the weiner room and you walk through it to the shipping room. There is only a wall with an opening rather than a door between the shipping room and the boning room.

The hamburger meat was in a metal container described as a lifter tub which is about the size of a No. 2 washtub. It was sitting beside the scales about 5 to 6 feet from them. The tub weighed approximately 15 pounds and contained about 25 to 30 pounds of meat. There were two sets of scales with a table between them which was flush with and connected the two scales. Opposite the scales was another table containing a roll of white wax paper, tape and other materials used in wrapping meat. This table would be 5 or 6 feet behind a person standing in front of the scales. It was used to stack meat on as well as to wrap it. There was testimony that the employer was of the opinion that female employees should not lift more than 25 or 30 pounds and that he discouraged employees from seeking help. The plaintiff by deposition testified she had lifted the tub many times before May 9, 1964 particularly during the past 3 years. At the time of the trial she stated she may have lifted it before but could not remember doing so. She had obtained help in lifting the tub on prior occasions.

On May 9, 1964, the plaintiff saw the lifter tub of hamburger meat sitting on the floor. She knew it was too heavy. There was no one else in the room. She did not seek help elsewhere. She picked the tub up and set it on the scales and in doing so sustained the injury in question. She stated she knew the tub was heavy or too heavy and that there was some risk in lifting it but did not know it would hurt her. She "didn't think about hurting my back," although "the tub just looked a little heavy * * * ." She testified that if she had anticipated injury to her back she would never have picked it up but she was unable to foresee injury to her back—had she thought she was going to hurt her back she "would have quit first" rather than lift the tub.

On the day in question there were 20 to 30 employees on the job. Usually there were as many employees on Saturday, "as there is on any other day." Any one of these employees could have been summoned for help. She could have called for help without the necessity of leaving her station. There were men working in the boning room that morning. Tom Pierce was there. He would have assisted the plaintiff had she called out to him according to his testimony. There was at least one person in the office. She saw his head in a window that opened into the shipping room. She could have requested the assistance of one or both of the female employees she had been working with in the weiner room. She was their supervisor. Certainly, one or both of them would have responded to a request by her for assistance. The plaintiff admitted that if other employees happened to be in the room she asked for and received help. That they were always agreeable to help if they had time. On the occasion in question she made no effort to determine whether her employer or any of her fellow employees could or would help her. Her only excuse was that no one was in the shipping room at the moment she decided to lift the tub. The plaintiff in her testimony at various points testified, "I wouldn't ever got any help if I didn't ask for it," that the men were pretty agreeable to helping the women when called upon and again, "if they were not busy they never refused to help me."

There can be no negligence on the part of the employer under such facts. In our opinion the employer under such circum-

stances should be given the opportunity to say "yes" in response to an employee's request for assistance.

■ His attitude or response had such a request been made should not be left to conjecture or imagination and certainly liability should not be hinged or based upon such nebulous grounds. To hold otherwise would place an employer at the mercy of every employee who with help available proceeds voluntarily to perform alone a task requiring assistance. The law does not require an employer to assign to each employee an assistant when the duties or work assignments of such employee may only occasionally require assistance and such assistance when needed is available on request or notice. The court in Western Union Telegraph Co. v. Coker, 204 S.W.2d 977 (Sup.Ct., 1947), said, "The employer is not liable when he has provided help and injury results from the act of the employee in voluntarily proceeding to do the work without assistance. The same is true when sufficient help is nearby and available and the employee does the work alone without seeking or asking for assistance."

Under this record lifting the tub in question was the only task the plaintiff had during the day in question which required assistance and then only for a few moments. She knew the tub was heavy and risk was involved in lifting it but she abstained from seeking help which she knew was available and voluntarily lifted it.

"The fact that, at the time a workman was injured in attempting to handle a heavy object with insufficient assistance, there was sufficient help available which he could have readily secured has often been relied upon as indicating the master's freedom from negligence." 36 A.L.R.2d, p. 32, § 7(c). See Jackson v. Marshall, 243 S.W. 2d 205 (Dallas Civ.App., 1951, no writ hist.); and Shumake v. Great Atlantic & Pacific Tea Co., 255 S.W.2d 949 (Dallas Civ.App., 1953, ref., n. r. e.). In the same text (36 A.L.R.2d, p. 30, § 7 (a)), " * * * or that by adopting another available meth-

od of doing the work, the danger could have been avoided," and page 30, § 7(b), "The fact that the number of men supplied to move a heavy object was insufficient to permit the job to be done in safety by the means adopted by the workmen will not ordinarily charge the master with negligence if the same number of men could have done the work without injury by following another plan of operations equally available to them." And page 32 same text, "In cases where the size of the load was left to the employee's discretion, the fact that he attempts to carry a load beyond his capacity and is injured does not subject the master to liability for failing to supply him with assistance." Jackson v. Marshall, supra. In this case an employee suffered a strain in carrying a tub of waste weighing 75 to 100 pounds. There was no showing he was required to fill the tub to this level, but he voluntarily did so. In Shumake v. Great Atlantic & Pacific Tea Co., supra, a woman employee was injured in lifting a heavy tray of meat. It was shown that there were empty trays available to which she could have shifted part of the load, but she did not do so.

"However, if the injured employee had no discretion in choosing the plan of operation, the fact that the job might have been done safely with the number of men supplied if the employer * * * had chosen another procedure will not excuse the employer from his failure to supply sufficient men to do the job by the method which he has actually chosen." 36 A.L.R.2d, p. 32, § 7(b).

In this case the method of doing the assigned task was within the sole discretion of the plaintiff. She testified, "I hadn't been instructed how to do it" and at another point, "no, sir, he never told me how to do it."

This record discloses at least two other methods available to the plaintiff by which she could have accomplished her assignment with safety to herself. She was asked, "Did you have any other kind of container,

other than the big, large tub that this meat had been put in out there?" She answered that they had some buckets down there the size of and with handles like a two gallon water bucket. She was then asked, "would hamburger meat put in these * * * be less weight than these big tubs of meat?" and she answered, "Oh, yes." "Q. Would it have been easier for you to lift than this big tub of meat? A. Yes, sir, because I could have picked it up by the bail and the bucket didn't weigh much."

There was no explanation in the record as to why the plaintiff did not use one of the buckets to transfer the hamburger meat from the tub to the scales. It would have required two trips or three at the most over the five or six foot space between the tub and the scales. She knew the tub was too heavy and that the bucket "didn't weigh much." Shumake v. Great Atlantic & Pacific Tea Co., supra, involving the employee injured in lifting a heavy tray of meat with empty trays available rather than buckets as here to transfer the meat is directly in point. In the Shumake case the plaintiff on previous occasions had asked for and received assistance from other employees and knew that she could have obtained help before she was injured but the men employees complained about helping her.

Plaintiff's co-employees testified as to another and safer way by which they had performed the same task and that they had seen the plaintiff in the past use the same method. To employ this safer method the tube of meat was left on the floor. Meat was removed from it by the handsful and deposited on paper which had been placed on the scales.

To remove the meat from the tub you could, "pat it around" and "lift fifteen pounds up there," (to the scales) in one "gob" by hand. After you got it on the scales you could take it off, "what you needed—a certain amount goes in each package." The meat was usually in one, two or three pound packages, seldom more than three pounds in a single package. The plaintiff rejected this method because of the remote possibility of dropping the meat on the dirty floor yet she transfered the meat from scales to wrapping table the same distance without dropping it on the floor.

By the use of this safer method the plaintiff could have removed the 25 or 30 pounds of hamburger meat from the tub to the scales with little or no loss of time and without risk of injury. Further, the plaintiff could have moved the tub by sliding it over the floor to a position closer to the scales rather than lifting it up onto them.

The plaintiff asserted that she alone or with assistance always lifted the tub upon the scales and took the meat out by hand with an eye on the scales to determine the weight of the meat removed. In this manner the meat was prepared in separate parcels for wrapping. The plaintiff not only denied she had ever used the safer method above described but stated she never saw anybody else wrap the hamburger meat and never saw anybody pick it up handful at a time to weigh it. She stated, "I don't have any way of knowing when I pick that meat up in my hand whether it weighs a pound or not, so when I put it on the scales, I'm not going to have the right amount and I've got to go way back over there again either to put meat back or to take more meat out." *Way back over there* is a distance of five or six feet, the same distance as from the scales to the wrapping table.

Here as elsewhere the plaintiff puts considerable stress on the fact that she was told to hurry and wrap the hamburger meat.

It was unnecessary for her to make trips to put meat back or take more out. By putting the meat in "gobs" on the paper or by use of one of the buckets available she could have employed the same method she was accustomed to because either the paper or the bucket would have been on the scales in place of the tub. Her testimony

that the scales were bloody and she did not have time to clean them off is untenable. There was a cloth or shroud available for this purpose or she could have placed some of the wax paper on the scales as did other employees to protect the meat. The time element under this record was not crucial or critical except in the mind of the plaintiff. It was used by her as an excuse to explain her action in voluntarily lifting the tub without calling for assistance when she knew it was too heavy and in failing to employ a safe method of procedure when same was available at her discretion. Under the authorities her excuse is legally unacceptable.

In Great Atlantic & Pacific Tea Co. v. Lang, 291 S.W.2d 366 (Eastland, Tex.Civ. App., 1956, ref., n. r. e.), the jury found the defendant guilty of failing to provide sufficient help and a lift and transport device to carry the cartons involved. The Court of Civil Appeals reversed and rendered for defendant. In that case, as here, the plaintiff had no specific instructions as to how he should perform his assignment. He admitted it was pretty well left to his discretion. There was a safe way by which the plaintiff could have performed his task had he chosen to do so. He testified that he was told by his employer "to hurry and fill the shelves." The court in reversing and rendering said, "The fact that he may have attempted to lift a load beyond his capacity and was injured thereby does not subject appellant to liability for failure to supply him with assistants. Louisville & N. R. Co. v. Green, 255 Ala. 642, 53 So.2d 358. The burden was on appellee to show that he was not furnished sufficient help to handle the cartons of tissue with safety to himself, employing such methods as were open to him. The appellant is not to be held negligent in this respect as there is a safe and reasonable way to perform the task with the force at hand. There is no showing that appellant could have foreseen that appellee would attempt to lift the carton of tissue to a greater height when a less hazardous meth-

od was available to him." See also 38 Tex. Jur.2d, p. 277, § 98 (p. 280), wherein it is stated, "The burden is on the injured employee to show that he was not furnished sufficient help to handle the work with safety to himself, even employing such work methods as were open to him." See also August v. Texas & N. O. R., 265 S.W. 2d 148 (Beaumont, Tex.Civ.App., 1954, ref., n. r. e.); Sears, Roebuck & Company v. Wedgeworth, 252 F.2d 759, rehearing denied (1958).

There was more than one safe way in which the plaintiff could have performed the task if she had chosen to do so. She did not, and under the authorities no liability can be imposed upon the employer for such failure. See also Collins v. Singer Sewing Machine Company, 239 F.2d 705, Fifth Cir., New Orleans, Louisiana (1957), appealed from Wichita Falls, Texas.

The mere placing of the lifter tub on the shipping room floor cannot in itself be negligence under the facts of this case. We are of the further opinion that the plaintiff cannot prevail because one element of proximate cause, that of foreseeability, is not present and neither of the findings of the jury is a proximate cause of the injury sustained by the plaintiff. Even the plaintiff was unable to foresee injury according to her testimony.

In Great Atlantic & Pacific Tea Co. v. Evans, 142 Tex. 1, 175 S.W.2d 249 (1943), citing Collins v. Pecos & Northern Texas Ry. Co., 110 Tex. 577, 212 S.W. 477, 222 S.W. 156; Johnson v. Wichita Valley R. R. Co., Tex.Civ.App., 104 S.W.2d 128, it is stated: "Although injury may result from a person's act or omission, yet, if the actor could not have reasonably foreseen the resultant injury, or injuries, similar in character, he is not to be held responsible therefor, 30 Tex.Jur. p. 663, and authorities there cited; Texas & Pacific Ry. Co. v. Bigham, 90 Tex. 223, 38 S.W. 162; Union Stock Yards v. Peeler, Tex.Com.App., 37 S.W.2d 126." The opinion concluded, "Finally, we think that the facts of this

record fail, as a matter of law, to show that A. & P. ought to have foreseen that Evans would be injured by doing the character of work required of him in this instance."

In considering the evidence from the standpoint most favorable to the plaintiff we can find no basis for findings of negligence or proximate cause on the part of the appellee.

In 38 Tex.Jur.2d, p. 277, § 98, it is stated: "An employer must furnish an adequate force of competent workmen for carrying on the work requested of the employees with reasonable safety. The master must use ordinary care to see that there are sufficient servants present at a particular piece of work to insure the safety of all engaged in the labor. The master's duty extents to all classes of work, ranging from the navigation of an ocean steamer and the operation of a railway train to the lifting of a log or the turning of a stone. This duty is continuous and nondelegable where the supplying and placing of a sufficient number of workmen is essential to the safety of the employees. * * * To impose on the master prima facie liability for any breach of duty in this connection, the assignment of an insufficient force must be the proximate cause of the injury. When work is done regularly by other employees without assistance, one element of proximate cause, that is, foreseeability, is not present and therefore the failure on the part of the employer to furnish extra help is not a proximate cause of the injury. * * * Also an employer is not liable when he has provided adequate help and injury results from the act of the employee in voluntarily proceeding to do work without assistance, or when sufficient help is nearby and available and the employee does the work alone without seeking or asking for assistance. Further, where the movements of servants are not controlled by a superior, temporary inadequacy of servants at the time and place of the injury cannot be made the ground for a recovery, unless the inadequacy was known, either actually or constructively, to the master or his representative." See also 35 Am.Jur., p. 626, § 197 and authorities cited therein.

All points of error are overruled and the judgment is in all things affirmed.

Affirmed.