TOWN & COUNTRY MOBILE HOMES,
INC., Appellant,

v.

Wanda Ruth BILYEU, Appellee.

No. 2–84–152–CV.

Court of Appeals of Texas,
Fort Worth.

Aug. 8, 1985.

Fillmore, Purtle & Spurgers, Stephen Briley, Wichita Falls, for appellant.

Mason & Snodgrass, Don Snodgrass, Wichita Falls, for appellee.

Before BURDOCK, JOE SPURLOCK, II and HILL, JJ.

## OPINION

JOE SPURLOCK, II, Justice.

This is an appeal by Town & Country Mobile Homes, Inc., from the trial court's denial of its motion for judgment non obstante veredicto. At trial, the jury awarded damages to appellee, Wanda Ruth Bilyeu, for loss of past earnings, physical pain and suffering, and for medical bills. The suit was for damages for personal injuries received by Bilyeu in the course of her employment with appellant.

 Appellant did not carry workers' compensation insurance and therefore was barred from common law defenses of contributory negligence, and negligence of a fellow servant. TEX.REV.CIV.STAT. ANN. art. 8306, sec. 1 (Vernon Supp.1985). For Bilyeu to recover it was necessary that she prove negligence on the part of appellant and that such negligence was a proximate cause of her injury. The trial was to a jury upon special issues and after the verdict was received by the trial court, it rendered judgment based thereon.

We affirm.

The evidence was uncontroverted that Bilyeu was hurt while working for appellant, Town & Country Mobile Homes, Inc., on the job. Appellant was engaged in the business of manufacturing mobile homes and Bilyeu worked in the finishing or squawking department. In the squawking department her work involved doing final touch up before the mobile home trailers were sold. During her lunch break she tried to get down out of the mobile home in which she was working and stepped onto a wooden cable spool which was used by some employees as a means of access to and from the trailers. The evidence showed the distance from the ground to the floor of the mobile home trailers was approximately four feet and although some employees were able to leap into the trailers or jump down from the same, Bilyeu, because of her size, was unable to do so, and needed a means of access to and from the trailers.

Employees ordinarily gained access to the mobile home trailers in a variety of ways, running and jumping into them, using small ladders, and some using the used cable spools, which had been altered on the job into a sort of step-spool. The particular cable spool used by Bilyeu on the date of her injury was described as approximately 16 or 18 inches in diameter and approximately two feet high when resting on one of its sides. Bilyeu had previously requested and received the use of a small ladder to get in and out of the trailers. She testified that her ladder was not available on the day of her injury and that therefore she used one of the cable spools. As she stepped on the spool it began to turn and rotate causing her to fall to the ground. She sustained various physical injuries and was later treated by an orthopedic surgeon. She was off work for a number of months and suffered some pain and suffering, and received surgery to alleviate some of the pain.

In answer to special issues inquiring of negligence on the part of appellant the jury found as follows:

Appellant:

(a) Failed to provide a safe means of access to and from the trailer?
No

(b) Provided an unsafe means of access to and from the trailer?
Yes

Was this a proximate cause of the accident?
Yes

(c) Failed to warn Plaintiff as to potential hazards in using cable spools?
No

Based on the above answers to the issues it is clear that appellant did provide a safe means of access to and from the trailer for Bilyeu and further did warn her as to the potential hazard of using the cable spool. However, the jury also found that the employer had provided an unsafe means of access to and from the trailer, and that this was a proximate cause of the injuries received by Bilyeu.

Based upon the jury's answer inquiring whether or not the employer had provided safe access for Bilyeu, appellant moved for a judgment non obstante veredicto because having sustained its burden to provide a safe means of access to and from the trailer, it had complied with all that the law required it to do. The trial court denied the motion. Appellant raises six points of error on appeal, complaining of the trial court's action.

In point of error one appellant complains of the court's overruling the motion for new trial because the evidence conclusively showed appellant had provided a safe means of access. In point of error two appellant complains of the overruling of the motion for judgment non obstante veredicto for the same reason. Points of error three and four complain of the court's overruling the motion for new trial and the motion for judgment respectively, because the appellant's act in using the unsafe method of access after being personally provided a safe means was unforeseeable.

In support of its position appellant has cited this court to a number of prior cases concerning the duty an employer owes to its employee. The crux of appellant's argument is that having provided the employee a safe means of performing a task, it owes no further duty to the employee, and cannot be held responsible if the employee uses an unsafe means to accomplish a part of that task. Further, if the employee uses such an unsafe means and is injured, then that act of the employee is unforeseeable under the circumstance. We disagree that the law in Texas is that the employer's duty ceases when it has provided a safe means to perform an act, when it permits the employee, or others similarly situated, to continue to employ unsafe acts.

■ In addition to the issue found by the jury that appellant had provided a safe means of access for Bilyeu, the jury found also that the employer had provided an unsafe means of access. Bilyeu testified at trial that on the day of her accident, that the small ladder the employer had furnished for her use, and was safe to use,

was not available. This testimony was contradicted by a co-worker who stated that the ladder was available. Appellant asks us to find that the jury's answer to the question of whether or not the employer provides a safe means of access implies a finding that the jury found that Bilyeu's ladder was available on the date of the accident. This we decline to do. There was no issue inquiring about whether or not the ladder was available to Bilyeu on the time of the accident in question, and we will presume no such finding by the jury in the absence of that particular issue. Even if the jury had found the ladder to be available, what is uncontroverted is that the jury found that the employer had also provided an unsafe means of access.

The cases cited by appellant in its brief concern discretionary acts on the part of injured employees, when the employees choose to do an act in an unsafe manner, after the employer had provided safe alternative means of performing the act. The cases do stand for the proposition that where an employer has provided a safe means of accomplishing a task, that it is unreasonable to foresee that an employee will choose to perform the task in an unsafe manner. The cases cited are *Fields v. Burlison Packing Company*, 405 S.W.2d 105 (Tex.Civ.App.—Fort Worth 1966, writ ref'd n.r.e.); *Great Atlantic & Pacific Tea Company v. Lang*, 291 S.W.2d 366 (Tex. Civ.App.—Eastland 1956, writ ref'd n.r.e.) and *Great Atlantic & Pacific Tea Co. v. Evans*, 142 Tex. 1, 175 S.W.2d 249 (1943).

In *Great Atlantic & Pacific Tea Company v. Lang* the testimony was undisputed that the injured employee would not have been injured if he had not attempted to place too many items on top of each other before moving a buggy in which he was carrying too many cartons of tissue. *Lang*, 291 S.W.2d at 367. Although the employee had been told by the manager to hurry and fill the shelves with the item, the employee admitted the manner of performing the task was in his discretion. *Id.* The court finding that there was a safe way for the employee to have performed his task,

his discretionary choice of an unsafe way prohibited his recovery. *Id.* at 368.

In *Fields* the fact that the employee chose to move a heavy tub of meat in an unsafe manner when the same could have been moved safely barred recovery and did not result in a finding of negligence against the employer. *Fields*, 405 S.W.2d at 110. The court noted that there were other safe methods of moving the meat rather than the sole discretionary method chosen by the employee. *Id.* at 109–10. The court noted particularly "[t]here was more than one safe way in which the plaintiff could have performed the task if she had chosen to do so. She did not, and under the authorities no liability can be imposed upon the employer for such failure." *Id.* at 110.

■ Appellant argues that once an employer has furnished a safe way for an employee to do a job, the employer has no duty to provide a second safe way. We agree with that proposition. However, appellant argues that once the employer has provided a safe way for the employee to perform the duties, to require that the employer eliminate all unsafe methods of doing the work would be to impose an onerous burden on employers. We do not agree that this is the law or that it is such an onerous burden.

■ In this case the jury's verdict was not that the employer failed to provide more than one safe way, nor do we believe that the employer has a duty to provide more than one safe way, but we do believe that the employer has a duty *not* to provide an unsafe way for the employee to perform the task. The ultimate issue in this case is the foreseeability of Bilyeu in using the unsafe method that the jury found was provided by the employer.

■ The chief case relied upon by appellant is the *Great Atlantic & Pacific Tea Co. v. Evans.* That case held that:

Although injury may result from a person's act or omission, yet, if the actor could not have reasonably foreseen the resultant injury, or injuries, similar in character he is not to be held responsible therefor.

*Great Atlantic & Pacific Tea Co. v. Evans,* 175 S.W.2d at 251. Appellant argues that one element of proximate cause, that is foreseeability, was not present. We disagree. The question the jury answered about appellant providing an unsafe means of access to the trailer and of Bilyeu's using the same is a question of foreseeability. If the employer knew that the manner of access to the trailers used by some of its employees was unsafe, and if it knew that those employees were using such a method of access, then it is foreseeable that some one or more of the employees would be injured. To hold that Bilyeu could not recover if she used such a method of access is the same as holding that the employer is entitled to rely upon the doctrine of contributory negligence, which it may not do in this case.

■ Appellant argues that it was unforeseeable that Bilyeu would use one of the small spools to exit the trailer when she had at her own request been provided with a stepladder for her own personal use in getting in and out of the trailer. It is specious arguing for appellant to make this claim. Much of the testimony in trial revolved around the number of appellant's employees who used this method of access to and from the trailers and about how the spools were constructed at appellant's place of business to be used as a means of access. Bilyeu's testimony was that her ladder was missing at the time on the occasion in question and she used the step-spool which other employees had been using themselves. Further, Bilyeu's supervisor testified she used the spool herself. We find as a matter of law that when its employees are using unsafe methods to perform a task for the employer, and the employer knows of the practice, it is the duty of the employer to eliminate those unsafe methods that it knows of.

■ The testimony at trial revealed that there were not enough stepladders furnished to be used by all employees. In fact, when an employee got a stepladder, it

often would be taken from the employee to whom it was issued and be used by someone else in another department. The fact that Bilyeu's co-worker testified that the ladder was available to use on the day the accident occurred, is controverted by Bilyeu's testimony that it was not.

■ We have declined to hold that the jury's answer that the employer furnished a safe method of access means that the jury found that that ladder was available for Bilyeu's use at the time of the accident. We do find that the jury's answer that the employer furnished unsafe methods of access is controlling in this case. This case is distinguishable from those cited by appellant and discussed herein because in none of those cases did the employer furnish the unsafe means for the employee to accomplish the task. We overrule points of error one, two, three and four.

In points of error five and six appellant complains of the trial court's overruling its motion for new trial, and in rendering judgment for Bilyeu respectively because there is insufficient evidence to support the jury's answer which found Bilyeu had lost $20,000 in past earnings.

■ Where the challenge to a jury finding is framed as an "insufficient evidence" point, we are to consider all the evidence in the case, both that in support of and that contrary to the finding, to determine if the challenged finding is so against the great weight and preponderance of the evidence as to be manifestly erroneous or unjust. *See Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex.1965). If the court so determines, the finding should be set aside and a new trial ordered. *Id.*

■ In considering an "insufficient evidence" point, we must remain cognizant of the fact that it is for the jury, as the trier of fact, to judge the credibility of the witnesses, to assign the weight to be given their testimony, and to resolve any conflicts or inconsistencies in the testimony. *See Taylor v. Lewis*, 553 S.W.2d 153, 161 (Tex.Civ.App.—Amarillo 1977, writ ref'd n.r.e.). This Court may not substitute its

judgment for that of the jury if the challenged finding is supported by some evidence of probative value and is not against the great weight and preponderance of the evidence. *See Alford, Meroney & Co. v. Rowe*, 619 S.W.2d 210, 213 (Tex.Civ.App.—Amarillo 1981, writ ref'd n.r.e.).

■ The evidence at trial showed that Bilyeu was earning $3.35 per hour while working 45 hours per week at the time of the injury. Her average gross earnings were approximately $150 per week. The accident occurred on February 26, 1981 and the jury returned its verdict on February 13, 1984, 154 weeks after the accident. She had claimed lost wages equal to 154 times $150 per week for a sum of approximately $23,000. The jury awarded her $20,000 in lost earnings, which is less than the amount she claimed. The doctors called by deposition, by appellant to testify at trial, described her injuries as a broken left wrist (a colles fracture) and an injury to the median nerve of the left arm, which required a carpal tunnel release surgery, and an injury to her lower back. She was first given a light duty release on the 24th of June 1981, yet was seen by the same doctor on July 6, 1981 when the doctor noted that her attempt to return to work had caused increased swelling in the median nerve and probable aggravation of the carpal tunnel syndrome.

In answering a hypothetical question describing Bilyeu's duties and whether or not she could return to those duties on a full time basis on July 6, 1981, the doctor testified that "obviously at that time she cannot go back to the same type of work that she has been doing." When asked about Bilyeu's injury comparing her age, 50, to a person younger, the doctor indicated her prognosis may be slightly worse than for the younger person. In addition he indicated that it was significant that she obtained a carpal tunnel syndrome as a result of trauma and that, coupled with a colles fracture of her wrist, would give her a poorer prognosis than might otherwise be expected. The doctor testified that he had hoped the back problems would have been

resolved by October 1981. During his deposition on June of 1983 he opined that if Bilyeu still complained of trouble with her wrist then the doctor would suspect that she might have other problems such as carpal bone instability, for which there is not satisfactory surgical treatment available.

Another doctor who saw Bilyeu during the fall of 1981 testified by deposition that he felt that she had a chronic or acute lumbar and cervical sprain and that he would place specific limitations including no bending, lifting, stooping, or walking for a prolonged period of time and no weight lifting over 15 pounds. He noted positive findings on the straight leg raising test performed on Bilyeu in September and November 1981 and that this test, along with a positive finding on another test, indicated to him a possible irritation of the sciatic nerve.

Bilyeu testified concerning her physical limitations, as well as her injury, and of her inability to perform ordinary tasks that would be required of someone to get and keep a job utilizing the skills for which she had training and experience. In detail she testified regarding limitations the injuries caused her and the continuing problems she had. Reviewing all of the evidence, we conclude that the evidence is sufficient to support the verdict and that the verdict is not against the great weight and preponderance of the evidence. Points of error five and six are respectively overruled.

The judgment is affirmed.