**WOODLAWN MANUFACTURING,**
**INC., Appellant,**

v.

**Eva ROBINSON, Appellee.**

No. 06–96–00025–CV.

Court of Appeals of Texas,
Texarkana.

Submitted Oct. 8, 1996.

Decided Oct. 30, 1996.

Rehearing Overruled Dec. 3, 1996.

**546**

Mike A. Hatchell, Molly H. Hatchell, Ramey & Flock, Tyler, Jess C. Rickman, III, Crouch & Hallett, Dallas, for appellant.

Joe R. Green, Fetter, Green & Associates, Longview, for appellee.

Before CORNELIUS, C.J., and GRANT and STARR, JJ.

## OPINION

CORNELIUS, Chief Judge.

Woodlawn Manufacturing, Inc. appeals an adverse judgment awarding Eva Robinson $291,000.00 in damages for injuries she received while employed by Woodlawn. Robinson alleged that Woodlawn's negligence caused her injuries. Woodlawn is a nonsubscriber under the workers' compensation law. TEX. LABOR CODE ANN. § 406.001, et seq. (Vernon 1996). Woodlawn challenges the legal and factual sufficiency of the evidence supporting the jury's verdict on which the judgment is based. We reject these challenges and affirm the judgment.

On April 27, 1993, Eva Robinson, a machine operator employed by Woodlawn, slipped and allegedly hurt her back while operating a Fuji machine. Robinson testified that she slipped on machine coolant that had accumulated on the floor beneath and around her work station. Woodlawn's production supervisor, Don Auderer, testified that Woodlawn knew that coolant leaked and dripped from the Fuji machines, making the surrounding floor slippery. Woodlawn, however, contends that it used ordinary care to make Robinson's work station safe in spite of the slippery floor.

Woodlawn attached front and back shields to catch most of the coolant that sprayed while the machines were operating, but it knew that coolant still leaked from the machines and accumulated on the floor at the workers' positions. In an effort to lessen the risk of workers slipping on the coolant, Woodlawn provided wooden pallets for the workers to stand on. These pallets elevated the work stations about two inches above the concrete floor. Woodlawn also provided shop rags to its employees to clean any dripping coolant, and also provided an absorbent material (known as "Floor Dri") that could be thrown on the floor to absorb excess coolant.

Floor Dri is a granulated clay product commonly used in machine shops to absorb oily or greasy substances. Fuji machine operators typically used Floor Dri three or four times a day, but Woodlawn's supervisor admitted that it did not instruct the workers when or how often to use Floor Dri. Woodlawn's witness gave conflicting testimony regarding Floor Dri's effectiveness. He testified that Floor Dri made the floors safe, but acknowledged that the floor was sometimes still slippery even after coolant was absorbed by Floor Dri. Robinson testified that she used Floor Dri. She said it was effective for a short time, but that it became slippery itself after it had soaked up coolant and remained on the floor.

Woodlawn did not hold safety meetings or give specific safety instructions to its employees. Auderer testified that he was available to consult with any employee who requested help with safety measures or if he observed any unsafe practices.

Robinson's job was smoothing the rough edges on metal tubes. The Fuji machine holds the tube and spins it so that a cutting blade can finish the rough edges. At the end of each run, Robinson measured the tube and stacked it on a ledge for transfer. After a number of tubes accumulated, Robinson transferred them to a cardboard parts box located adjacent to her work station. Robinson was given a quota or goal of 1,200 tubes per work day. In order to meet her quota, she had to finish about 150 tubes per hour.

Robinson's work area consisted of the Fuji machine and two parts boxes. Each component was elevated two inches off the floor by four foot long wooden pallets. The parts boxes and supporting pallets were delivered to the work station in the morning by a worker operating a fork lift and were replaced periodically during the day as the box became full. Woodlawn did not instruct the fork lift operator to always place the pallets flush against each other to make a continuous elevated surface and avoid gaps, but left the decision where to place the pallet at the

worker's discretion. Robinson, however, testified she was not told that she should direct the placement of the pallet, and that she relied on the company personnel to place it.

Robinson's production goal was 1,200 tubes per day. Woodlawn calculated the goal by determining the total amount of work time available and dividing it by the amount of time it took a single worker performing at a normal pace to finish one tube. Woodlawn allowed an hour and twenty minutes for delays and work breaks. Auderer testified the goal allowed sufficient time for employees to meet their goals and keep their work area clean. Robinson testified it was impossible to maintain the desired production rate and keep the work area clean of spilled coolant.

On the day of Robinson's accident, Woodlawn was operating five of its eight Fuji machines. Before starting work, Robinson spread Floor Dri around and under her pallet. A fork lift operator delivered the cardboard parts box and pallet to her work station. The parts box pallet was not placed flush with the one on which Robinson stood, and there was a gap between them. Because Robinson is short of stature, she could not lean over and reach the parts box to place the finished tubes without stepping on the floor at the gap between the two pallets. Woodlawn contends that the fork lift operator routinely asked each employee where they wanted the pallet. Auderer, however, admitted that Woodlawn gave no specific instructions about the placement of the pallets. Robinson testified that the driver did not ask and left in a hurry. Robinson said she did not complain about the conditions of her work place because she was afraid if she complained she would be fired.

Between 8:00 and 9:00 a.m., Robinson machined and transferred approximately 150 metal tubes. She applied Floor Dri again at approximately 9:15 a.m. Between 9:00 and 9:45 a.m., Robinson stepped off the pallet several times to transfer tubing to the parts box. At approximately 9:45 a.m., she slipped and fell when transferring finished tubes to the parts box. Robinson testified she stepped down, putting her left foot between the two pallets, and slipped as she started putting her right foot down. She started

falling backwards, but the pallet caught her left foot and sent her forward into the parts box.

Robinson reported the accident that afternoon to Don Auderer. Auderer testified that Robinson told him she had lost her balance, fell into a box, and hurt her back. She did not mention slipping in coolant. Robinson worked the rest of the week. The following Monday, Robinson completed a company accident report. The report said nothing about slipping in coolant, only that she turned at her work station and fell into a box. Robinson sought medical treatment, which ultimately resulted in back surgery.

Woodlawn first contends that the trial court erred in overruling Woodlawn's motion for directed verdict and motion for judgment *non obstante veredicto* because there is no evidence to support the jury's finding of negligence or its award of damages.

When deciding a "no evidence" point, we consider only the evidence and inferences tending to support the jury's finding and disregard all evidence and inferences to the contrary. *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex.1965). We may not substitute our judgment for that of the fact finder unless only one inference can be drawn from the evidence. *Havner v. E–Z Mart Stores, Inc.*, 825 S.W.2d 456, 461 (Tex.1992).

If the evidence creates nothing more than a mere surmise or suspicion of negligence, the evidence is the legal equivalent of no evidence. *Martinez v. Delta Brands, Inc.*, 515 S.W.2d 263, 265 (Tex.1974). But if negligence can reasonably be inferred from direct or circumstantial evidence, there is more than a scintilla of evidence and we must overrule the no evidence challenge. *Farley v. M M Cattle Co.*, 529 S.W.2d 751, 755 (Tex.1975); *Martinez v. Delta Brands, Inc.*, 515 S.W.2d at 265.

Woodlawn is not a subscriber under the workers' compensation law. Robison thus has the burden to prove that Woodlawn was negligent, and Woodlawn is prohibited from asserting the common law defenses of contributory negligence, assumption of the

risk, and fellow servant negligence. Tex. Labor Code Ann. § 406.033(a), (d).

To show negligence Robinson must prove that Woodlawn owed her a legal duty, it breached that duty, and she was damaged as a result of the breach. *El Chico Corp. v. Poole*, 732 S.W.2d 306, 311 (Tex.1987); *Atlas Truck Lines, Inc. v. Bachelor*, 639 S.W.2d 329, 331 (Tex.App.—Texarkana 1982, writ dism'd). The initial inquiry is the existence of a duty, and the foremost consideration is foreseeability of the risk. *El Chico Corp. v. Poole*, 732 S.W.2d at 311.

Robinson asserted at trial that Woodlawn was negligent in four respects: it failed to provide her a safe place to work; it allowed coolant to accumulate on the floor; it improperly placed the pallet holding the parts box; and it set an unrealistic production quota that prevented Robinson from being able to meet her goal and keep her area clean. If one of these theories is supported by legally and factually sufficient evidence, we must affirm the judgment. *Werner v. Colwell*, 909 S.W.2d 866, 869 (Tex.1995).

■ An employer must provide rules and regulations for the safety of its employees, furnish safe machinery and instrumentalities, provide a safe place to work, and select competent fellow servants. *Burk Royalty Co. v. Walls*, 616 S.W.2d 911, 923–24 (Tex. 1981); *Fort Worth Elevators Co. v. Russell*, 123 Tex. 128, 70 S.W.2d 397, 401 (1934).

■ Woodlawn does not dispute that it owed a duty to Robinson to provide her with a safe work environment, but it correctly points out that it is not required to act as an insurer of its employees' safety. *Exxon Corp. v. Tidwell*, 867 S.W.2d 19, 21 (Tex. 1993). The test whether the employer has met its obligation is the exercise of ordinary care based on general negligence principles. *Id.*

Woodlawn contends it did not breach its duty. It bases its contention on two arguments: First, it fulfilled its duty by providing Robinson with at least one safe method of performing her work. Second, Robinson's injuries were not foreseeable.

■ Where an employer provides its employee with at least one safe way to perform her assigned tasks and the employee chooses to perform the task by a different method, thereby injuring herself, the employer is not liable. *Fields v. Burlison Packing Co.*, 405 S.W.2d 105 (Tex.Civ.App.—Fort Worth 1966, writ ref'd n.r.e.); *Great Atlantic & Pacific Tea Co. v. Lang*, 291 S.W.2d 366, 367–68 (Tex.Civ.App.—Eastland 1956, writ ref'd n.r.e.). Woodlawn contends that it provided a safe method through its multiple efforts to eliminate the risk of employee injury posed by leaking coolant.

■ The *Fields* and *Lang* cases, cited by Woodlawn, are distinguishable. Those cases rest on the premise that the employer provided a safe method of performing the assigned task, but the employee abandoned the safe method and deliberately chose a different, unsafe method. In this case, there is evidence which, if believed by the jury, shows that Robinson followed the prescribed method of work as far as she was able to do so under the existing circumstances. Where there is reason to anticipate from the work to be performed and the manner of performance that injury may result to an employee, it is incumbent on the employer to exercise ordinary care to prevent injury. *Collins v. Pecos & N.T. Ry. Co.*, 110 Tex. 577, 212 S.W. 477, 478 (1919).

■ Even though Woodlawn provided some safeguards, there is evidence that it failed to instruct its employees on how to properly perform their jobs while avoiding known safety risks. Auderer admitted that Woodlawn had no specific safety instructions, and that he never discussed safety with Robinson. A corporation has a nondelegable duty to provide rules and regulations for the safety of its employees. *Burk Royalty Co. v. Walls*, 616 S.W.2d at 923–24; *Fort Worth Elevators Co. v. Russell*, 70 S.W.2d at 401. Woodlawn did not hold formal safety meetings. Its employees learned how to do their jobs and keep their areas clean by watching and copying the practices of their fellow employees. Implicit within the duty of providing safety rules and regulations is the responsibility for ensuring that they are followed. *Morgan v. Pool Co.*, 641

S.W.2d 370, 373 (Tex.App.—Dallas 1982, writ ref'd n.r.e.).

██ Robinson's injury was also foreseeable. Foreseeability requires only that the general danger, not the exact sequence of events producing the harm, be foreseeable. *Walker v. Harris*, 924 S.W.2d 375 (Tex.1996).

Woodlawn asserts it provided Robinson with several methods to avoid the harm that produced her injuries. But so long as Robinson followed the prescribed method for her work, her failure to take other precautions would fall into the categories of contributory negligence and assumption of the risk. These defenses are statutorily denied Woodlawn, since it is a nonsubscriber under the workers' compensation law. TEX. LABOR CODE § 406.033(a), (d).

██ It is true that an employer is not liable for an employee's injury when the employer has provided help and the employee tries to complete the task without assistance, or where sufficient help is nearby and available and the employee proceeds to do the work without asking for assistance. *Western Union Telegraph Co. v. Coker*, 146 Tex. 190, 204 S.W.2d 977, 979 (1947). The placement of the pallets in a position where Robinson could not perform her work without stepping into the gap on the floor, however, is not a matter of seeking assistance. An employee, immune from contributory negligence, is not required to seek assistance to change the configuration of a work station provided to her by the employer. In this case, there is evidence that Woodlawn knew the pallets should be placed flush together for maximum safety, yet gave no specific instructions to anyone that they should be so placed. The evidence is conflicting whether Robinson had the right or duty to direct the fork lift operator where to place the pallets. The jury could have found that Woodlawn was negligent in allowing the pallets to be placed where the employer had to step on the slippery floor to transfer the tubes to the adjoining box.

Additionally, Kenneth Pierce, a former maintenance machinist for Woodlawn, testified that Woodlawn experimented with one of its machines by placing a hood around the "chuck" and the coolant tank, and that the hood "pretty much" stopped the machine from leaking coolant. Woodlawn did not furnish hoods for its other machines, however.

Only one of Robinson's negligence theories must be established to show that Woodlawn breached its duty. Based on the evidence and inferences supporting the jury's verdict, there is more than a scintilla of evidence supporting the jury's conclusion that Woodlawn breached its duty to provide Robinson with a safe work environment.

██ A successful negligence action requires proof of proximate cause. *Prudential Ins. Co. v. Jefferson Assocs., Ltd.*, 896 S.W.2d 156, 160–61 (Tex.1995). Proximate cause consists of cause in fact and foreseeability. Both elements must be present. *Farley v. M M Cattle Co.*, 529 S.W.2d at 755. Proximate cause cannot be established by conjecture, but must be proved by evidence of probative force. *Id.* The evidence must prove that the act or omission was a substantial factor in bringing about the injury and that it would not have occurred otherwise. *Prudential Ins. Co. v. Jefferson Assocs., Ltd.*, 896 S.W.2d at 161.

██ The evidence is conflicting. Robinson testified in response to a question about the condition of the floor when she stepped down, "I wasn't paying no attention then. I didn't look down", and in response to a question whether Robinson was looking where she stepped, she responded, "No." But this testimony does not stand alone. In response to questions about what caused her fall, Robinson testified, "the coolant," "the coolant on the floor when I slipped," and "the slippery floor, the coolant."

██ Whether a particular act of negligence is a cause in fact of an injury is a particularly apt question for jury determination. *Farley v. M M Cattle Co.*, 529 S.W.2d at 756. Proximate cause may be established by circumstantial evidence. *Id.* at 755. In dealing with a "no evidence" point of error, this court must ask whether the evidence as a whole rises to a level where reasonable and fair minded people can differ in their conclusions. *Transportation Ins. Co. v. Moriel*, 879 S.W.2d 10, 25 (Tex.1994). Given the

conflicting evidence in this action, the jury certainly could believe Robinson's version of the facts.

Viewing the evidence in the light most favorable to the verdict and considering only the evidence and inferences supporting it, as we must, we do not find that the trial court erred in rejecting Woodlawn's request for a directed verdict and motion for judgment *non obstante veredicto.*

Woodlawn next contends that the trial court erred in overruling its motion for a new trial because the evidence is factually insufficient to support the jury's verdict or so against the great weight and preponderance of the evidence as to be manifestly unjust.

In reviewing questions of factual sufficiency, we consider and weigh all the evidence, both in support of and contrary to the challenged jury verdict. *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660, 661 (1951). The verdict must be upheld unless we conclude that it is so against the great weight and preponderance of the evidence as to be manifestly unjust. *Id.* This court may not substitute its own opinion for that of the jury's verdict merely because we might draw different inferences or conclusions. *Benoit v. Wilson,* 150 Tex. 273, 239 S.W.2d 792, 797 (1951).

The factual issues presented to the jury mirror those examined under Woodlawn's no evidence points of error. The evidence must provide factual support for the conclusion that Woodlawn had a legal duty, breached that duty, and damages resulted from the breach. *El Chico Corp. v. Poole,* 732 S.W.2d at 311.

Woodlawn asserts an array of facts undermining the sufficiency and justness of the jury's verdict. Robinson contends Woodlawn fails to consider equally valid contrary evidence. When there is conflicting evidence, the jury's decision is generally conclusive. *Chemical Express Carriers, Inc. v. Pina,* 819 S.W.2d 585, 590 (Tex.App.—El Paso 1991, writ denied) (citing *Montgomery Ward & Co. v. Scharrenbeck,* 146 Tex. 153, 204 S.W.2d 508 (1947)). Contradictory evidence was heard by the jury regarding whether Woodlawn provided a safe work en-

vironment, Floor Dri's effectiveness, who controlled placement of the pallet for the parts box, Robinson's testimony as to what caused her fall, and the effect of Woodlawn's production quota on Robinson's ability to keep her work area clean. Woodlawn also attacked Robinson's credibility, raising valid questions as to whether Robinson's accident even took place.

As the trier of fact the jury is the sole judge of the credibility of the witnesses and the weight to be attached to their testimony. *Mid–South Bottling Co. v. Cigainero,* 799 S.W.2d 385, 389 (Tex.App.—Texarkana 1990, writ denied). The jury may also draw inferences from the facts and choose between conflicting inferences. *Ramo, Inc. v. English,* 500 S.W.2d 461, 467 (Tex.1973).

Conflicting evidence certainly exists in this case, but we are not the fact finder and we cannot substitute our judgment for that of the jury. The jury's verdict is not so against the great weight and preponderance of the evidence as to be manifestly erroneous or unjust.

For the reasons stated, we affirm the judgment.