Opinion issued
October 20, 2011.



In The

Court of Appeals

For The

First District of Texas

 

————————————

NO.
01-10-00867-CV

———————————

 

AMIGOS
mEAT dISTRIBUTORS, l.p., Appellant

 

V.

 

mARIO
eLIZONDO, Appellee



 



 

On Appeal
from the 334th District Court

Harris
County, Texas



Trial Court Case No. 2008-20479

 



 

 

MEMORANDUM OPINION

 

Amigos Meat Distributors, L.P. appeals
a judgment in favor of its employee Mario Elizondo, who was injured in the
course of his employment.  After a jury
trial, the trial court rendered judgment on the verdict awarding Elizondo
damages in the amount of $123,723.36.  In
three issues, Amigos contends that it owed no duty to Elizondo.  We conclude that the trial court properly
found that Amigos owed a duty to Elizondo.  We therefore affirm.

Background

Mario Elizondo was an employee of Amigos Meat Distributors,
L.P., which was a worker’s compensation insurance non-subscriber.  Elizondo previously owned and operated his own
meat cutting business, Texas Meats, which went out of business.  Amigos purchased a meat cutting plant, TG Meat
Plant, and hired the plant’s former owner, Tony Garcia, as the new plant
manager.  Amigos also hired Elizondo as a
meat cutter because of his experience cutting frozen meat.  Elizondo provided Garcia, who was
inexperienced, with assistance in setting up the plant and learning to cut
frozen meat.  When he began working at
the meat plant, Elizondo requested gloves due to the temperature of the meat,
and Garcia provided him with them.  The
gloves, according to Elizondo and Garcia, help the cutter work more quickly to
produce more cuts.  Elizondo had always
used gloves while cutting frozen meat. 

Elizondo further suggested the type of meat cutting saws
that should be used.  When Elizondo
started at Amigos, Amigos was using Hobart brand saws.  Elizondo requested Garcia purchase a Biro
brand meat cutting saw.  Elizondo had used
a Biro brand saw throughout his previous eight years of meat cutting experience.   The
saw had a pusher tool to assist the operator with cutting meat, but Elizondo
did not use it.  Elizondo continued to
use gloves with the Biro saw.  

The Biro saw came with a manual.  The manual stated that gloves should not be
worn while using the saw and that pig’s feet should not be cut with the saw.  Additionally, the manual stated that the
pusher tool should always be used for smaller products or the last cuts of
product.  Garcia read the manual and was
aware of its contents.  Elizondo
testified that Garcia did not relay the warnings in the manual and did not
provide a copy of the manual.  Garcia
testified that he did not show the manual and the warnings to Elizondo because
he assumed that Elizondo had read the manual at some previous point considering
he had used similar saws in the past.

Elizondo’s injury occurred at 3:30 p.m. on a Monday after
Elizondo was off for the previous two days.  Elizondo was cutting beef feet and was wearing
gloves on his hands.  Garcia testified
that beef feet and pig’s feet use the same cutting technique and the safety
warning regarding pig’s feet would likely have applied to beef feet as well,
making it unsafe to use the Biro saw to cut beef feet.  Additionally, Garcia testified that deviations
from the safety manual may be unsafe.  As
Elizondo was cutting the beef feet, his glove got caught in the saw and pulled
his hand into the blade causing his injury.  The jury found Amigos was negligent and
awarded damages in the amount of $123,723.36 to Elizondo. Amigos moved for a judgment
notwithstanding the verdict on the question of legal duty, and the trial court
upheld the jury’s finding in favor of Elizondo.                                                                                         


Law Applicable to
Worker’s Compensation Non-Subscribing Employers

          In order for
an employee to recover from an employer who is a non-subscriber under the Texas
Worker’s Compensation Act, the employee must establish negligence on the part
of the employer.  Aleman v. Ben E. Keith Co., 227 S.W.3d
304, 310 (Tex. App.—Houston [1st Dist.] 2007, no pet.).  A negligence cause of action has three
elements: (1) a legal duty owed by one person to another, (2) a breach of that
duty, and (3) damages proximately caused by the breach.  Id.
 The threshold inquiry in a negligence
case is duty.  Centeq Realty, Inc. v. Siegler, 899 S.W.2d
195, 197 (Tex. 1995).  

          The existence
of duty is a question of law for a court to decide from the facts surrounding
the occurrence in question.  Van Horn
v. Chambers, 970 S.W.2d
542, 544 (Tex. 1998); Siegler,
899 S.W.2d at 197; Greater Houston Transp. Co. v. Phillips, 801 S.W.2d 523, 525 (Tex. 1990).  “The existence of duty is a question of law
when all of the essential facts are undisputed, but when the evidence does not
conclusively establish the pertinent facts or the reasonable inferences to be
drawn therefrom, the question becomes one of fact . . . .”  Mitchell
v. Missouri-Kansas, Texas R.R. Co., 786 S.W.2d 659, 662 (Tex. 1990) (quoting
Bennett v. Span Indus., Inc., 628 S.W.2d 470, 474 (Tex. App.—Texarkana 1981, writ ref’d
n.r.e.)); see also Sanders v. Herold,
217 S.W.3d 11, 15 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (citing Mitchell).  

          The test for legal sufficiency of
evidence to support a fact is whether the evidence would enable reasonable and
fair-minded people to determine the fact exists.  See
City of Keller v. Wilson, 168 S.W.3d 802, 807 (Tex. 2005).
The reviewing court considers the evidence in the light most favorable to the
judgment, crediting favorable evidence if a reasonable fact-finder could, and
disregarding contrary evidence unless a reasonable fact-finder could not.  Id. at 807.  Evidence is legally insufficient when the
record discloses a complete absence of evidence of a vital fact, the court is
barred by rules of law or evidence from giving weight to the only evidence offered
to prove a vital fact, the evidence offered to prove a vital fact is no more
than a scintilla, or the evidence conclusively establishes the opposite of a
vital fact.  Id. at 810.

Employee’s Fatigue

          In its first issue, Amigos contends
that it had no duty to warn Elizondo of the dangers of working while
fatigued.  Amigos acknowledges that the
major thrust of Elizondo’s case concerned whether Amigos had a duty to warn or
train Elizondo concerning the dangers of cutting beef feet while wearing gloves
but, because of the broad form negligence question posed to the jury, addresses
this issue “out of an abundance of caution.” 
Elizondo concedes that the jury’s verdict may not be upheld on this
theory because no evidence supported a finding that Elizondo’s fatigue caused
the accident.  We agree that the judgment
cannot be upheld on this basis.  Accordingly,
we turn to the other bases for the trial court’s judgment, which Amigos also
challenges on appeal. 

Duty to Warn or Train

          In its third issue, Amigos contends
that it owed no duty to warn, train, or otherwise safeguard Elizondo because he
was an experienced meat cutter who was hired because of his experience. 

          An employer has a duty to “warn an
employee of the hazards of employment and provide needed safety equipment or
assistance.”  Jack in the Box, Inc. v. Skiles, 221 S.W.3d 566, 568 (Tex.
2007).  An employer has a “duty to warn or caution an employee of
a danger” when (1) ‘the employment is of a dangerous character requiring skill
and caution for its safe and proper discharge,” and (2) “the employer is aware
of the danger and has reason to know the employee is unaware.”  Nat’l
Convenience Stores Inc. v. Matherne, 987 S.W.2d 145, 149 (Tex. App.—Houston
[14th Dist.] 1999, no pet.).  However,
an employer is not an insurer of its employees’ safety.  Kroger Co. v. Elwood, 197 S.W.3d 793, 794 (Tex. 2006).  An employer therefore does not owe a
duty “to warn of hazards that are commonly known or already appreciated by the
employee.”  Jack in the Box, 221 S.W.3d at 568–­69 (quoting Elwood, 197 S.W.3d at 794).  In looking to the scope of this duty, the
employee’s age and experience should be considered.  Nabors
Drilling, U.S.A., Inc. v. Escoto, 288 S.W.3d 401, 412 (Tex. 2009).    

In this case, Amigos’s
expert testified that wearing gloves while operating the saw posed a
danger.  There is evidence that Amigos
was aware that using gloves while operating the saw presented a danger, because
Garcia read the manual that came with the saw. 
The manual specifically stated that gloves should not be worn while
operating the meat cutter.  By contrast,
although Elizondo was an experienced meat cutter and aware that operating a
meat cutter is dangerous generally, there is no evidence that he knew about the
risk of wearing gloves while
operating this meat cutter.  Garcia
assumed that Elizondo had previously reviewed the manual and that Elizondo was
aware of the risk of wearing gloves while operating the meat cutter.  There is
evidence, however, that Elizondo was unaware of the danger of wearing
gloves.  Elizondo testified that he was
not shown the manual and was not warned that wearing gloves posed a
danger.  He further stated that he did
not know wearing gloves was dangerous and we would not have done so if he had
been warned.  In sum, the jury reasonably
could have found that Amigos, through Garcia, was aware of the danger of
wearing gloves while operating the meat cutter (Garcia had read the manual),
and that Garcia had reason to know that Elizondo was unaware of the risk of
wearing gloves while operating the meat cutter (Garcia knew that Elizondo was
acting contrary to the warning in the manual). 
Thus, the evidence supports a finding that Amigos was aware of the
danger and of which it had reason to know Elizondo was unaware.  See
City of Keller, 168 S.W.3d at 807.  Under those facts, Amigos had a duty to warn
Elizondo of the danger.   See Nat’l Convenience Stores Inc., 987 S.W.2d at 149 (duty to warn
exists when “the employer is aware of the danger and has reason to know the
employee is unaware”).  

We
overrule Amigos’s third issue. 

Alternate Safe Method

Amigos, in its second issue, argues that Elizondo chose to
use an alternate method to perform his job where a safe method was provided to
him.  Specifically, Amigos contends that
because a pusher tool was available to Elizondo, it is not responsible for Elizondo’s
decision not to use the pusher tool, and its negligence in failing to train
Elizondo did not cause his injury. 

          “Where an employer provides its employee
with at least one safe way to perform her assigned tasks and the employee
chooses to perform the task by a different method, thereby injuring herself,
the employer is not liable.”  Woodlawn Mfg., Inc. v. Robinson, 937
S.W.2d 544, 548 (Tex. App.—Texarkana 1996, writ denied) (citing Great Atl. & Pac. Tea Co. v. Lang,
291 S.W.2d 366, 367–68 (Tex. Civ. App.—Eastland 1956, writ ref’d n.r.e.)).  When, however, there is evidence that the
employer failed to instruct its employees on how to perform their jobs while
avoiding known safety risks, an employer may still be liable.  See id.   

          The jury
heard evidence that Amigos was aware that the pusher tool should be used, but
that Elizondo did not use it.  The
manual, which Garcia read, states “ALWAYS
Use Supplied Safety End Cut Pusher Plate for Smaller Products or The Last Cuts
of Product.”  But Elizondo testified that
he was not shown the manual.  In fact,
Elizondo testified that, based on his experience, he thought it was dangerous
to use the pusher tool to cut feet.  The
jury also heard testimony from Amigos’s industrial safety expert that the
failure to use the pusher plate was the most important factor that contributed
to Elizondo’s accident.  He also
testified that it was Amigos’s responsibility to ensure Elizondo and the other
employees used the pusher tool and were properly trained on how to use the
saw.     Additionally,
the jury heard some evidence that cutting beef feet was not safe even with the
pusher tool.  Elizondo testified that he
thought it was unsafe to use the pusher tool to cut feet.  The jury also heard testimony that cutting
pig’s feet is similar to cutting beef feet, and the manual specifically stated,
“DO NOT Use This Machine to Cut Pig[’]s
Feet.”  Garcia stated that, because of
the similarities between beef feet and pig’s feet, the saw should probably not
be used on beef feet.  There was some
evidence before the jury to show that cutting beef feet was not safe even with
the pusher tool and that Amigos failed to instruct Elizondo in a safe method to
avoid known safety risks.  Therefore, the
evidence supports a finding that Amigos breached its duty to provide a safe
method to Elizondo, and that it was a substantial factor in causing his
injury.  See id.; see also B-Line
Filter & Supply Co. v. Cagiano, No. 08-99-00468-CV, 2001 WL 1249263, at
*3 (Tex. App.—El Paso Oct. 18, 2001, pet. denied) (not designated for
publication) (holding employee’s testimony that employer did not instruct him
on safe method to carry out his task created fact issue for jury to resolve on
whether employer instructed employee in a safe method of performing the
work).  The issue of whether Elizondo’s
failure to use an alternative method caused his injury, rather than improper
training, was properly left to the jury to resolve.  

          We overrule
Amigos’ second issue.


Conclusion

We affirm the
judgment of the trial court.

 

 

                                                                   Rebeca
Huddle

                                                                   Justice


 

Panel
consists of Chief Justice Radack and Justices Bland and Huddle.